BARBER G. BUEL v. THE NEW YORK CENTRAL RAILROAD
COMPANY.

A passenger, who is injured in attempting to leave the cars on seeing two.trains
approaching each other at such a speed as to make a serious collision inevita-
ble, is not to be deemed guilty of negligence.

Although he is upon the platform of the cars, attempting to escape, at the time
he was injured, he is not standing or riding upon the platform in such a sense
as to excuse the company under the regulation prohibiting passengers from
standing or riding on the platform when the cars are in motion.

APPEAL from judgment of the Supreme Court. The action
was to recover damages for injuries received by the plaintiff,
while a passenger on the defendant's railroad, in October, 1857,
by a collision of trains on the route between Rochester and
Batavia.

The cause was tried at the Genesee Circuit, in November,
1858, before Mr. Justice DAVIS and a jury. It appeared
from the evidence that on the evening of the 9th of October,
1857, the plaintiff was a passenger on a train of cars of the
defendant's passing west from Rochester through Bergen,
between Rochester and Batavia. He occupied a seat in the
second passenger car, near the center, and upon the south
side. Upon reaching Bergen the train was run on a switch,
where it remained fifteen minutes waiting for a train due
there from the west. It then started west, and had proceeded
but a short distance when the train from the west was dis-
covered coming at the speed of about twenty-five miles an
hour. The engine attached to the train on which the plaintiff
was, was reversed, but not in time to enable it to be backed
wholly down on the switch, and avoid a collision. The col-
lision occurred, driving the cars of one of the trains from
forty to sixty rods over the ties, killing at least one man on
the down train, jamming up the train going west, and
breaking off some of the platforms of its cars.

The plaintiff had remained in his seat all the time the train
was at Bergen. He sat facing the engine, by a window that
was open. When his train stopped, and commenced backing

down, he looked out of the window and saw the approaching train, and men jumping from the cars. He left his seat, and hurried to the forward door of the car as fast as he could to escape. As he opened the door, and set his right foot on the platform, the collision occurred. He was thrown forward and partially stunned; he tried to get up, but could not use his right leg; it was broken in four places below the knee, and his ankle and knee were bruised. He was taken to the Bergen station, and from thence to the hotel, where he was attended by a surgeon, and where he remained nine or ten weeks. He suffered severely for the first three weeks; after three weeks, had pain at intervals; after five or six weeks sat up in a chair occasionally; and at the end of seven weeks he got upon crutches and left his room. It was about five months before he got to his home in Michigan. In addition to the fractures and bruises, the injury obstructed the circulation in the leg, producing varicose veins to a considerable extent. The plaintiff was thirty-five years old, and a farmer accustomed to labor. Previous to the injury his health had always been good; he was robust, active, healthy, a great worker, and very vigorous. After the injury, and up to the time of the trial, he had not been able to work much; his leg was constantly swollen, and after exercise, pained him at night.

The car in which the plaintiff was seated at the time of the accident was about two-thirds full of passengers. There seems not to have been an unusual commotion in this car at the time of the collision, and those who remained in their seats were uninjured.

There were posted in the several cars of the train passing west printed notices prohibiting passengers from standing or riding on the platforms of any car, &c., and that safety and convenience required that passengers should keep their seats.

Upon the plaintiff resting, the counsel for the defendant moved for a nonsuit on the grounds: 1. Because the plaintiff had failed to show any negligence on the part of the defendants. 2. Because the proof showed that the plaintiff was not without fault on his part, and that his own negligent acts contributed to produce the injury of which he has complained.

The court refused the nonsuit, and the defendant excepted.

On the trial the plaintiff called Dr. Thompson as a witness in his behalf. He testified that he had been a physician and surgeon for thirty years, and had known the plaintiff for twenty years, having been his father's family physician; that he visited the plaintiff at Bergen about a week after the injury, and made two visits soon afterwards. He found that the leg had been broken in four places; in one place the bone was broken into a number of pieces; knee and ankle and heel were very much bruised and discolored. He examined the leg again in January, and also in June following; the soft part of the leg was very much injured; the injury seemed to have obstructed the circulation, producing varicose veins to a considerable extent; the leg is swollen now (at the time of the trial), and always has been since the injury; swollen and tender, and sinking on pressure.

The plaintiff's counsel then put this question to the witness: " State your opinion, as a medical man, as to the permanency of this injury." This question was objected to by defendant's counsel as incompetent, and the court overruled the objection, and the defendant excepted. The witness answered: " I think it will always be an imperfect limb."

*Question by plaintiff's counsel:* " What degree imperfect, including disability and pain ?" Objected to, overruled, and exception as before. *Answer:* " I think he will never be capable of performing labor to the same extent as formerly, or that a common man would; if he exercises hard he will fail; that he will not be able to labor generally; in hard labor he will fail; as age advances it will be as bad or worse than it is now; it will perhaps improve for five or six years if there is no hard usage."

The counsel for the plaintiff also inquired of Dr. O. P. Clark, who examined the plaintiff's leg on two or more occasion (the last time the day before the trial), his opinion as to the permanency of the injury, to which inquiry the counsel for the defendant objected, as incompetent. The objection was overruled, and defendant excepted. The witness answered: " My opinion is, he will always suffer inconven-

ience from that injury; I think it will always give him trouble; always pain him more or less; I doubt whether the fracture of the leg will ever be as perfect as the other parts; these injuries I regard as permanent."

The counsel for the defendant, among other things, requested the judge to charge the jury:

*First.* That as the plaintiff was injured on the platform of the car, in violation of the printed regulations of the company (the defendant), he is not entitled to recover.

But the judge refused so to charge, and the defendant excepted.

*Second.* That the plaintiff leaving his seat, and going to the forward end of the car into the apprehended danger, was not the exercise, on his part, of ordinary care and prudence.

The judge refused so to charge, and the defendant excepted.

The jury found a verdict for the plaintiff. Judgment being entered, on appeal to the Supreme Court it was affirmed. The defendant appeals to this court.

*J. H. Martindale,* for the plaintiff.

*S. T. Fairchild,* for the defendant.

WRIGHT, J.   It is not now claimed, as it was on the motion for a nonsuit, that the evidence failed to show negligence on the part of the defendants. Indeed, a grosser case of careless conduct is seldom presented to a court and jury. The train in which the plaintiff was a passenger had been run on the switch at Bergen, to await a train from the west which was due there. After waiting some fifteen minutes the train was irregularly started, the conductor getting on the engine. It was a dark and foggy night. The train had proceeded some forty rods when the western train was seen approaching at a rate of speed of about twenty-five miles to the hour An effort was made, by breaking up and reversing the engine, to get the up train back on the switch, but before this could be effected a collision of the trains occurred. The case then was, that on a dark and foggy night, trains of the defendants running in opposite directions, out of time, and one of them,

at least, at an unusual rate of speed, near a station, run into each other, occasioning destruction of property and periling the lives of the passengers. No casualty can occur on a railroad which manifests grosser carelessness than a collision of trains which are running towards each other, out of time, and at a rate of speed which prevents their being stopped in season. And that was just this case.

But it is insisted that, although the defendants' negligence caused the injury complained of, the plaintiff should have been nonsuited, because his careless conduct contributed to produce it. The misconduct alluded to is, that, upon seeing the approaching train and men jumping from other cars to avoid the impending danger, he left his seat and rushed to the forward door of the car with the view of escaping himself, and had stepped one foot upon the platform at the instant of the collision. This, it is said, was such negligence as to have required the court to nonsuit the plaintiff. That is, as a matter of law, a passenger in a railroad car, who sees that he is placed in peril by the culpable conduct of the managers of the road, and judges correctly that a collision is inevitable, is guilty of a wrong, if he does not control the instinct of self-preservation, and sit still, and take the chances of safety. This is not the law. Seeing the danger in which he was placed, the plaintiff was justifiable in seeking to escape injury by leaving the car. His act was not the result of a rash apprehension of danger that did not exist. By the merest chance, the passengers in the same car with him, and who did not, like him, see the approaching collision, and who retained their seats, escaped uninjured. Although doubtless much excited, I do not think even that there was an error of judgment as to the course pursued to secure safety. A moment of time earlier would have enabled him to leap from the car, thus affording a probable chance of escape. But if he misjudged in this respect, the circumstances did not, as matter of law, charge him with negligence, or want of ordinary prudence. Seeing the approaching train, and that a collision, with its consequences, was inevitable, it was not the dictate of prudence to have deliberately kept his seat

without an effort at self-preservation. There is no man, under the circumstances, retaining his senses and acting with ordinary prudence, that would not have exerted himself in some way to escape the great peril. It was not to invite, but to escape injury that he left his seat, and rushed to the door of the car; and an instant of time more would have enabled him to effect his purpose. That other passengers, who neither saw or had notice of the impending danger, remained in their seats, and, by chance, were uninjured, is no evidence that they judged rationally, or judged at all, as to what prudence required, or that the plaintiff misjudged, and acted rashly. At all events, it was for the jury, and not the court, to say whether the plaintiff's conduct, in view of the circumstances, was rash or imprudent, or amounted to negligence.

The court was requested to charge the jury, that as the plaintiff was injured on the platform of the car, in violation of the printed regulations of the company, he was not entitled to recover. This was properly refused. The statute exempts a railroad company from liability to a passenger who shall be injured while on the platform of a car, &c., in violation of the printed regulations of the company posted up at the time in a conspicuous place inside of its passenger cars then in the train; provided the company at the time furnished room inside its passenger cars sufficient for the proper accommodation of the passengers. (Laws of 1850, ch. 140, § 46.) There was, in this case, a printed regulation, pursuant to this statute, posted in a conspicuous place inside the car, prohibiting passengers from standing or riding on the platform of any car. But neither the statute or the regulation has any application to a case like the present one. The plaintiff was not standing or riding on the platform at the time of the collision, but was hurrying as fast as he could to leave the car, in order to escape an imminent peril. The statute was intended to prevent the imprudent act of standing or riding on the platform, but not to absolve railroad companies from responsibility for every injury which might happen at that

place, when a passenger is passing over it, while justifiably entering or leaving the cars.

Medical witnesses, who had attended upon and made frequent examinations of the plaintiff, even down to the day before the trial, were allowed, under objection, to give their opinions as to the permanency of the injury; and in the case of Dr. Thompson, upon his answering that he thought the injured leg would always be an imperfect limb, to state to what degree imperfect, including disability and pain. This was not error. The objection was to the incompetency of the testimony, and not to the incompetency of the witnesses to express their opinions on the subject of inquiry. It was not incompetent. The plaintiff was entitled to be compensated for the pain, and suffering, and disability resulting from the injury. In estimating the damages, the length of time an existing injury will continue must necessarily be considered; and there is no way of arriving at a conclusion on the subject, except by obtaining the facts, and the opinions of medical men. The question is peculiarly one of medical skill and experience.

I am of the opinion that the judgment of the Supreme Court should be affirmed.

PORTER and POTTER, JJ., did not sit; all the other judges concurring,

Judgment affirmed.