AUGUST DUTZI, BY NEXT FRIEND, Respondent, v. ANDREW GEISEL, Appellant.

St. Louis Court of Appeals, December 21, 1886.

1. MASTER AND SERVANT—VICE-PRINCIPAL.—A person employed to perform a superintending duty which the law imposes upon the master, stands in the master's stead with relation to other servants.

2. —— MASTER'S DUTY—MACHINERY.—A master is under obligation to see that machinery provided for the use of his servants is reasonably safe, regard being had to its nature and purposes.

3. —— NOTICE.—Notice to one employed by a master to inspect machinery, that such machinery is defective, is notice to the master.

4. NEGLIGENCE, CONTRIBUTORY—REASONABLE CARE.—An act which a careful person would ordinarily avoid may not be negligent when done under the impulse of sudden fear or surprise.

5. PRACTICE—JURY—SPECIAL QUESTIONS.—The court's refusal to submit certain specific questions to the jury is not ground for reversing the judgment, when it does not appear that their refusal was prejudicial to the party asking them.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Affirmed.*

KLEIN & FISSE, for the appellant: Under evidence showing that the injury and the negligence had no connection the court will direct a verdict for the defendant. *Dunn v. Railroad*, 21 Mo. App. 188. The master is not an insurer, and he is bound only to ordinary care in providing machinery for his employes. *Flynn v. Railroad*, 78 Mo. 195; *Cagney v. Railroad*, 69 Mo. 416; *Smith v. Railroad*, 69 Mo. 32. "If the person injured was fully aware of the hazard before the accident, or was guilty of negligence himself, he can not recover." *Nolan v. Shickle*, 3 Mo. App. 300; Deering on Negli-

gence, sect. 201; *Woodward Iron Co. v. Jones* [Sup. Ct. Ala.] 23 C. L. J. 296. And in such case a judgment for the plaintiff will be reversed in the appellate court. *Lenix v. Railroad*, 76 Mo. 86; *Cagney v. Railroad*, 69 Mo. 416, 424; *Price v. Railroad*, 77 Mo. 508; *Dunn v. Railroad*, 21 Mo. App. 188.

TAYLOR & POLLARD, for the respondent: The right to hire and discharge employes is not the test as to whether a foreman is a vice-principal. *Dowling v. Allen*, 74 Mo. 13; *Moore v. Railroad*, 85 Mo. 593. The true rule now is, that the master is liable for all injuries caused by the negligence of a fellow-servant, when such fellow-servant is empowered with superior authority, and may direct the inferior. Wood on Master and Servant, 86; *Granville v. Railroad*, 10 Fed. Rep. 711; *Ford v. Railroad*, 110 Mass. 260; *Railroad v. Savally*, 36 Ohio St. 221; *Laning v. Railroad*, 49 N. Y. 521; *Filke v. Railroad*, 53 N. Y. 459; *Cowdon v. Railroad*, 78 Mo. 567; *Hough v. Railroad*, 100 U. S. 213. Notice to a person to whom the master has delegated the duty of providing suitable machinery for employes, is notice to the master. *Fuller v. Jewett*, 80 N. Y. 46; *Maloney v. Locomotive Works*, 14 R. I. 204; *Davis v. Railroad*, 53 Vt. 84; *Fay v. Railroad*, 30 Minn. 23; *Filke v. Railroad*, 53 N. Y. 459; *Ford v. Railroad*, 110 Mass. 260; *Hough v. Railroad*, 100 U. S. 213; *Cone v. Railroad*, 81 N. Y. 206; *Railroad v. Kirk*, 62 Tex. 227.

THOMPSON, J., delivered the opinion of the court.

This was an action for damages for injuries received by the plaintiff while operating a machine as an employe of the defendant. The plaintiff had a verdict and judgment.

As in most cases of this kind, the stress of the case is the question of the plaintiff's own contributory negligence. The plaintiff, a lad about sixteen years of age, was in the employ of the defendant and was put to work

by the defendant's foreman with a machine used for cutting and crimping the caps and bottoms of tin cans. The machine and manner of operating it were exhibited to the jury at the trial. The machine had a broad platform, about three and a half feet from the floor, firmly fixed at an angle of about thirty-five degrees, the highest part being immediately in front of the operator and the slope being to the rear. In the center of this platform is a place where steel dies of various sizes may be adjusted. These dies are raised about three quarters of an inch above the plane of the platform, and firmly fixed thereon. Above the place where the die is so fixed there is a stationary slide supported from the rear of the machine, the bottom of which is about five or six inches from the top of the platform ; and in this slide, operating perpendicularly to the lower die, there is a punch supplied with a counterpart of the lower die. When in the operation of the machine, the punch and upper die are brought down, they descend exactly over the lower die, and can not descend anywhere else, or move in any other direction. Attached to the machine at the right of the operator there is a fly-wheel, which is constantly kept in motion by the belt connected with the shafting above it.

The motion of the fly-wheel, however, does not engage the sliding punch until, by a pressure of the foot upon a treadle, a clotch or piece of steel is projected into an opening left on the inside of the fly-wheel near its axle, and as the wheel revolves the clotch engages the sliding punch and brings it down upon the lower die with great power, cutting and turning up the edges of the tin placed on the lower die by the operator, and forming a cover or bottom for a tin can at one stroke. The cover so cut falls automatically to the rear of the machine. The instant the pressure is removed from the treadle the clotch is automatically withdrawn from its position and the fly-wheel revolves without operating the machine again until the sliding punch is again en-

gaged in the same manner as above described. When the sliding punch has made its downward stroke, it immediately ascends and remains suspended, some four inches above the lower die, until it is again brought down by the projection of the clotch into the operating space of the fly-wheel. If the pressure of the foot is continued upon the treadle, the clotch continues to engage the sliding punch, and this in turn continues to ascend and descend until the pressure is removed, and then remains stationary above the lower die, as above described. If, therefore, the pressure upon the treadle is not immediately removed, upon the descent of the sliding punch, it will be re-engaged and descend again upon the lower die before the operator may wish it to come down. But no harm can come to the operator if he keeps his fingers from the lower die.

The evidence showed conclusively that the plaintiff was thoroughly acquainted with the danger attending the ordinary use of the machine, and thoroughly understood the necessity of keeping his hands away from the lower die, so that the descending punch could not touch them.

The plaintiff's evidence tended to show that, some days prior to the accident, the upper die had fallen while the plaintiff was working the machine and when his foot was not upon the treadle; that he had reported this fact to Gus Meyer, the assistant foreman, who had examined the machine, had oiled it, and had assured the plaintiff that the punch would not drop again without the plaintiff's foot being on the treadle. All the evidence in the case showed that Gus Meyer was the assistant foreman of the defendant, whose duty it was to put the boys at work in the particular room and to oversee them, and who had charge of the machinery in that room. As there is a question about the nature of the authority of Gus Meyer, it may be proper, in order to make ourselves more clear, to quote from the testimony adduced on behalf of the defendant upon this

point. Adelbert W. Geisel, son of the defendant and his general foreman, testified as to the position of Gus Meyer: "He sets dies and attends to the machinery, that it is all right; sets the dies and sharpens them up; partly attends to the boys once in a while when I am out. He sees that the boys do their work, that they do their duty. He has no right to employ or discharge men or boys. I give the instructions as to what the boys are to do. Independently of me, Gus Meyer has no authority whatever." The defendant himself, after testifying that no one but he and his son, Adelbert, had the right to employ or discharge men, added: "Gus Meyer attends to the machinery and to the boys in general in the machine shop where the cans are made. * * * Gus Meyer attends to the machines to see that they run all right. He sets the dies and attends to the machinery, so it is in running order." The plaintiff's evidence further showed that, on the first of October, 1885, while the plaintiff was working at the machine, the punch suddenly fell, although the plaintiff's foot was not upon the treadle; that when it came in contact with the die it cut two fingers of the plaintiff's right hand, takihg them off, the first between the first and second joints, the second at the first joint. It was freely admitted by the plaintiff in his testimony that he understood perfectly the necessity of keeping his hands away from the die, so that they would not get caught by the descending punch, and he does not give any intelligible reason why his hand got so caught, except that the punch fell so suddenly that he did not have time to think. He said: "I did not have time to think; I pulled them (my fingers) out; I thought I could get them away from there before the die would strike the under die. * * * If I had pulled my hand out to the right, instead of to the left, I would not have been injured."

We understand that the case presents no doubt, and that there is no disagreement between the learned counsel who represent the opposing parties, down to a

certain point. And that is this: If the plaintiff had not given evidence tending to show that Gus Meyer had, after being notified by him of the defective operation of the machine, attempted to repair the defect, and given the plaintiff assurance that he had done so, then, the plaintiff having received the injury, knowing of the defective operation of the machine, the plaintiff would have been guilty of such contributory negligence as would have barred his recovery as matter of law. With full knowledge of the danger, he would have elected to continue to use the machine. He would have proceeded as a voluntary agent, with his eyes open, and would have taken his chances. This would have precluded his right of recovery beyond any doubt.

But the evidence which the plaintiff gave, and which the jury believed, as is shown by an answer given by them to a special interrogatory, and by their general verdict under the instructions, to the effect that he had apprised Gus Meyer of the defective working of the machine, that the latter had attempted to remedy the defect, and had assured the plaintiff in substance that he had done so, and that he might thereafter continue to work it with safety, seems sufficient to take the case out of the rule which would bar a recovery on the ground of contributory negligence, unless we are wrong in one or both of the following conclusions: (1) That Gus Meyer was, in respect of the reparation of the machine, the *alter ego* of the defendant, so that this representation made by him to the plaintiff was, in contemplation of law, the representation of the defendant himself. (2) That the plaintiff who acts erroneously, in fact trusts himself into danger instead of getting out of it, under the impulse of a sudden shock or surprise produced by a catastrophe, which arises from the negligence of the defendant, is not, by reason of having so acted, conclusively to be deemed guilty of such contributory negligence as will bar his recovery of damages.

I. The evidence leaves it clear, beyond all doubt,

that Gus Meyer was, in respect of the representation above stated, acting as the vice-principal, or *alter ego*, of the defendant, within the recent holdings of our Supreme Court on this question. He was the defendant's assistant foreman. He had, in part, at least, charge of the particular department of the defendant's work in which the plaintiff was engaged. To him was committed the care and reparation of the defendant's machinery in that department of his work. The employes of the defendant in that department of the defendant's work were under Mr. Meyer's orders. *Dowling v. Allen*, 74 Mo. 13 ; s. c., 88 Mo. 293 ; *Moore v. Railroad*, 85 Mo. 588. The last two of these cases expressly lay down the rule that the right to employ and discharge hands is no test by which to determine whether the servant in question is the vice-principal of the master, or the fellow-servant of the servant who has received the injury. The opinion of the court given by Henry, C. J., in the second case, throws the question into clear light by stating the following propositions : "That all are fellow-servants who are engaged in the prosecution of the same common work, having no dependence upon or relation to each other, except as co-laborers without rank, under the direction and management of the master himself, or of some servant placed by the master over them." And on the other hand : "If a person employs another to perform a duty which he would have to discharge, if another were not employed to do it for him, such employe, as to that service, stands in the master's stead with relation to other persons." This second definition quite aptly fits the case of Meyer, as his position in the defendant's service was defined by the defendant's own evidence. Moreover, the position of Meyer in the defendant's service was, in point of fact, quite analogous to that of King in the defendant's service in the *Dowling case*, above cited, in which the supreme court, on both appeals, held that he was the defendant's vice-principal.

The principle upon which, as we take it, all the authorities agree, is, that the master is under what may be termed an absolute duty to his servant of using care, to the end that the machinery put into the hands of his servant for use shall be reasonably safe, having regard to its nature and the purposes for which it is intended. This duty he may discharge, either by himself in person, or by a designated agent or servant. If he discharge it by an agent or servant, the latter becomes, in respect of it, his vice-principal, wholly without reference to the rank which in other respects he occupies in his master's, or principal's, service. Notice to such vice-principal in respect of a defect in a machine is, therefore, notice to his principal, and a representation made by him to a servant of his principal, that the machine may be used with safety, or is free from a given defect, is, in law, the representation of the principal himself.

II. It is a well settled and constantly recognized exception to the general rule, that the contributory negligence of the plaintiff or person injured will bar a recovery of damages for an injury, that contributory negligence is not to be imputed to the plaintiff or person injured because he has acted erroneously under the impulse of fear produced by the negligence of the defendant, although if he had acted as a man, having time to deliberate, should have acted under the circumstances, he would not have received the hurt. *Stokes v. Saltonstall*, 13 Pet. 181; *Ingalls v. Bills*, 9 Met. [Mass.] 1; *Buel v. Railroad*, 31 N. Y. 314; *Wesley City Coal Co. v. Healer*, 84 Ill. 126; *Cook v. Parham*, 24 Ala. 21, 34; *Lund v. Tyngsboro*, 11 Cush. 563; *Sears v. Dennis*, 105 Mass. 310; *Card v. Elsworth*, 65 Me. 547; *Coulter v. Express Co.*, 56 N. Y. 585. Whether the facts, which the plaintiff's evidence tended to show, warranted the extension of this principle to this case is, it may be confessed, a close question; but we incline to think that it does. It would be stating the plaintiff's evidence too

broadly to say that it tended to show that he jerked his hand in the wrong direction through an impulse of sudden fear, when he discovered that the punch had suddenly started to fall. But we think that, under these circumstances, the physical facts of the case are evidentiary in their character, and may rightfully be considered by the jury in forming a conclusion as to the real cause of the accident. We think, moreover, that the plaintiff's counsel were entitled to argue to the jury, as they have argued to us, that the most probable theory of the accident is that a sudden contraction of the muscles of the plaintiff's arm, produced by the shock or surprise occasioned by the unexpected fall of the punch, caused his hand, instead of being withdrawn from the place of danger, to be thrust toward it. Certainly the plaintiff knew fully the danger of having his hand over the die whenever the punch should descend. He clearly understood the necessity of keeping his hand from over the die at all times. It can not be supposed that he thrust his hand into a position of danger voluntarily; and some conclusion, consistent with the evidence, and based upon the probabilities which are to be drawn from the physical facts of the case, must be drawn. We do not think that the evidence necessarily enforces the conclusion that the plaintiff held his hand carelessly in the position of danger and allowed the punch to strike it. If not, it was, under well settled principles, a question to be left to the jury, as triers of the facts.

For these reasons we hold that the court committed no error in refusing to give a peremptory instruction that the plaintiff could not recover.

III. The instructions, as a whole, submitted the case to the jury in a manner which leaves the defendant no just ground of complaint. What we have above said disposes of the principal objections which have been made to them. The second instruction given for the plaintiff, submitting to the jury, upon a hypothetical

state of facts, the law in respect of the liability of a master to a servant for the negligence of his vice-principal, was in conformity with the decision of our Supreme Court, above quoted, and the subject needs no further comment.

IV. The court put nine special interrogatories to the jury on the motion of the defendant, which they answered categorically, Yes and No. What we have said above disposes of the objection that the general verdict of the jury was contrary to their answers to these interrogatories. It also disposes of the objection that, on the face of the petition, the plaintiff was not entitled to recover.

V. The court, at the request of the defendant, put to the jury among others the following special interrogatory : "8. Did the plaintiff inform the defendant, or the foreman in charge of the defendant's shop, of such defect in said machine, before the plaintiff was injured ?" The defendant requested the court to put to the jury also the two following interrogatories which the court declined to do and the defendant excepted : "9. Whom did the plaintiff so inform ? 10. What was the direct and immediate cause of the injury sustained by the plaintiff ?" No precedent is cited to us to sustain the contention that the refusal to put these two interrogatories is such error as ought to work a reversal of the judgment. If the ninth interogatory had been put and the jury had answered that the plaintiff informed Gus Meyer, it would not have affected the result. Since we are of opinion, as above stated, that upon all the evidence in the case, Gus Meyer was, in respect of the transaction in question, the vice-principal of the defendant. Nor do we perceive any error necessarily prejudicial to the defendant in refusing to put the tenth interrogatory, "What was the direct and immediate cause of the injury sustained by the plaintiff ?" The jury had been instructed, at the request of the defendant, that, unless the defect in the machine was the imme-

diate and direct cause of the injury to the plaintiff, the plaintiff was not entitled to recover. The general rule is, where a substantial doubt arises as to whether the hurt was the natural and proximate, or a speculative and remote, result of the negligence which the evidence tends to show, the question is one of fact for the jury. *Dunn v. Railroad*, 21 Mo. App. 188, 198, and cases cited. The court, therefore, might well have given the special interrogatory requested ; but we do not see wherein any prejudice has accrued to the defendant from its refusal to do so.

VI. The defendant put to his own witness, Mr. Meyer, assistant foreman, the following question : "Now, I will ask you to explain to the jury whether, if the machine was out of order, so that the upper die would continue to come down, or would make two strokes instead of one, without putting the foot on the treadle ; whether, in that case, the machine is more or less dangerous, or any different than when the machine is in perfect order." This question was, on the objection of the plaintiff, excluded. We do not understand upon what ground this ruling of the court was made. The question is inartificially drawn, but we do not see any substantial objection to it. It called for the opinion of an expert, familiar with the machine, and possibly for some explanation which he might have been capable of making to the jury, which might or might not have thrown some light upon the subject of the inquiry. But we are equally unable to perceive any substantial prejudice to the defendant from the refusal of the court to allow it to be answered. It is to be remembered that the machine was exhibited, together with the manner of working it, to the jury. They could quite well understand, from an inspection of it, whether or not it would be more dangerous when out of order, so that the punch might descend suddenly and without warning upon the die. It seems that it was something which they could see and understand as well as Mr. Meyer, although an expert, could, and that it was

something about which the opinion of an expert was not required, and as to which the opinion of one intelligent man in the presence of the machine would be as good as that of another. A person of the least intelligence would know that the machine was more dangerous when thus out of order than when in good order, since when in good order the operator would always know when the punch was about to descend, and when in bad order he would never know that fact. It might work perfectly for several days in succession, and then it might suddenly descend, surprising the operator, as his evidence tended to show that it did in this case.

VII. A witness for the defendant testified that he saw Gus Meyer try the machine on the morning the plaintiff was hurt. He was then asked by the defendant, "and how did it work?" To this question an objection was sustained and an exception saved. We see no prejudicial error in this ruling, since it did not appear that the time referred to was *before* the accident, and as Gus Meyer testified that he inspected the machine after the accident, and found that it worked well, it is to be inferred that this question related to that inspection. If it had reference to a point of time before the accident, it would have been material, as bearing upon the question whether the defendant had exercised reasonable care with a view of keeping the machine in a safe condition. *Flynn v. Railroad*, 78 Mo. 195, 202. But as it is not shown to have referred to such a point of time, it had no very important bearing upon the issues under inquiry, and called for an answer which was merely cumulative.

The judgment will be affirmed. It is so ordered. All the judges concur.