THE COUNTY OF MONROE, Appellant, *v.* THE CITY OF ROCHESTER and SAMUEL B. WILLIAMS, as Treasurer of said City, Respondents.

*Street opening — assessment of expense — power of the Supreme Court to correct the assessment in an action brought by the party assessed.*

Although the assessment against property, made by assessors appointed to assess the expenses arising out of the opening of a city street may be grossly unjust and unequal as compared with the assessment against other property taken for such street, yet, if it results simply from an error of judgment on the part of the assessors, the Supreme Court has no power to correct it in an action brought by the owner for that purpose.

If, however, improper considerations enter into the minds of the assessors in making the assessment, or they adopt an erroneous rule or principle which results in great injustice to the property owner, the Supreme Court has power to correct the error.

The error will be corrected in a case in which it is apparent that the assessors did not adopt any rule in making the assessment upon the property of such owner, but arbitrarily fixed the amount of the assessment without the exercise of their judgment.

APPEAL by the plaintiff, The County of Monroe, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 28th day of November, 1894, upon the decision of the court rendered after a trial at the Monroe Equity Term dismissing the plaintiff's complaint.

*John Desmond,* for the appellant.

*A. J. Rodenbeck,* for the respondents.

LEWIS, J.:

The common council of the city of Rochester, in the year 1881, took proceedings for opening a street in that city, running east and west from State to Sophia streets, known as Church street.

The common council duly designated the portion of the city deemed to be benefited by the laying out of the street, and ordered an assessment to be made upon the portion of the city so designated to pay the expenses of the improvement.

The assessment was accordingly made, which was set aside by the

judgment of the Supreme Court because of irregularities of the assessors in making the assessment; a reassessment was thereafter made by the direction of the common council. The plaintiff, being the owner of a parcel of land which was assessed for said improvement, brought this action to vacate and set aside the assessment, because of various alleged errors and irregularities in the proceedings of the common council, and especially errors and irregularities of the assessors in making the assessment. The action was tried at the Monroe Special Term, and resulted in the dismissal of the plaintiff's complaint, and the plaintiff appealed from the judgment to this court.

The trial court did not deem any of the alleged errors of sufficient importance to justify setting the assessment aside. Many errors and irregularities in the proceedings and determinations of the assessors were charged in the complaint and litigated upon the trial. We agree with the conclusions of the trial court with one exception. We find, from an examination of the case, evidence of such a gross and excessive assessment of the plaintiff's property as compared with the assessment of the other property assessed, that our minds are led to the conclusion that there must have been some inexcusable error committed by the assessors in making the assessment, and a perusal of the testimony of Mr. Munn, one of the persons who made the assessment, and the only one of the assessors who was interrogated as to the rule or principle adopted in making it, strengthens and confirms the impressions made by the examination of the other evidence in the case. Plaintiff's property consists of a lot fronting upon the southerly side of West Main street; it is bounded on the west by Fitzhugh street, on the east by Irving place, and on the south by property of the city; it is 140.08 feet in width, and 264 feet in depth, and was proven to be worth about $250,000 at the time of the trial. At the time the assessment was made the evidence tends to show that it was worth about $150,000, and at this same time there was upon the lot an old court house, which has since been torn down and a new court house is being constructed thereon. The sum directed to be reassessed upon all the property in the district, for the improvement, was $185,000; of this sum the plaintiff's property was assessed $16,082.40.

The property directly east of plaintiff's lot, on the other side of

Irving place, bounded upon the north by the southerly side of West Main street 165 feet, and on the west by Irving place, on the east by Exchange street and 325 feet· in depth, which concededly was of much greater value than plaintiff's lot and an equal distance relatively from Church street, was assessed at only $8,827.12. A like inequality appears in the assessment upon the block adjoining the plaintiff's lot on the west across Fitzhugh street. Property across West Main street from plaintiff's lot, which fronts on Main street 162 feet and upon North Fitzhugh street 143 feet, and is occupied by the Powers Hotel and stores, which with its improvements was worth twice as much as plaintiff's lot, was assessed about $6,000.

The property known as Powers Block upon the corner of West Main and State streets, with a frontage on West Main of 165 feet and 171 on State street, and the width of Main street nearer Church street than plaintiff's lot, and which was valued at more than $1,000,000, was assessed at a little more than $7,000.

Many other instances of flagrant inequalities in the assessments appear in the case. Our attention has not been directed to another piece of property, in the entire district, which is assessed at anything like the amount of the plaintiff's assessment relatively.

The assessments upon lots which, by the opening of Church street, were given a frontage upon that street appear to be almost nominal in amount compared with the assessment in question, while plaintiff's lot is 455 feet distant from Church street.

Mr. Munn was called as a witness and questioned as to the plan or rule adopted by the assessors in making the assessment. He replied that it was a long time since the roll was made out, and that he could not state positively in regard to it. When asked to give some reason for the large assessment on plaintiff's property he said that they divided the property into grades and laid the assessments at amounts per foot for the different grades; that they took into account mainly the frontages the property had upon streets, and that in the case of the court house property they regarded the lot as having three frontages, one on Main, another on Fitzhugh and a third on Irving place, and when confronted with the fact that even then the amount of the assessment would not have been produced, he said that they might have arbitrarily made some additions to the frontages in the case of the plaintiff's lot. It is quite apparent

from the testimony of Mr. Munn that the assessors did not adopt any rule in making the assessment in question, but arbitrarily fixed the amount and that without the exercise of their judgment in the premises.

The following questions propounded to him and his answers thereto tend quite strongly to establish this conclusion: " Q. What is there in your reason that tells you the court house property, smaller frontage by 25 feet on Main street, receives more than twice the amount of benefits this other block has received (referring to the block on the other side of Irving place)?   A. The assessed valuation of the court house — the estimated valuation of the court house — when the first assessment for Church street was made was $150,000, and now the board of supervisors have been trying to sell it for $250,000, and the increase in price is based principally on the opening of Church street and the location of the government building, and I believe the law allows the assessors to place an assessment and benefit to the increase of the property. . Q. This other property is relatively the same distance from Church street, and must, on the same principle, have increased in value, must it not? A. I don't know; I haven't looked into it; that is, I haven't got it in my mind; I had this in my mind principally because that was in reference to the county building.   *   *   *   Q. Why is it that the smaller piece of property has increased any larger amount than the larger piece?   A. Well, that is our judgment; that is all.   Q. You haven't any reason to offer?   A. That is the reason; that it has. *   *   *   Q. Take the Powers Block, that has a frontage of 169 feet on Main street; it is 100 feet nearer to Church street; it is 171 feet on State street; it is valued for more than a million dollars, and it is assessed for a little over $7,000; it has quite as many square feet, nearly as many square feet, as the court house property; explain upon what rule or method you discriminated in that way between those two pieces of property?   A. We assessed according to benefits. Q. What method of reasoning led you to the conclusion that the court house property   *   *   *   received $16,000 while this block here of property received only $7,000?   A. I have no answer to offer to that."   The answers of this witness to questions propounded to him as to the assessments upon property in the immediate vicinity of Church street, and some of it fronting upon that street, and which

were, as compared with the assessment in question, absurdly small in amount, were equally unsatisfactory.

That the assessment of the plaintiff's property was relatively grossly unjust and unequal cannot be doubted by any one who examines the evidence. If this had resulted simply from an error of judgment on the part of the assessors we would be powerless to correct it in this form of action. (Cooley on Taxation [1st ed.], 533; *Guest* v. *The City of Brooklyn*, 69 N. Y. 506; *Hoffeld* v. *The City of Buffalo*, 130 id. 387.)

We feel quite sure that improper considerations were permitted to enter into the minds of the assessors in making the assessment; they must have adopted some erroneous rule or principle which resulted in this great injustice to the plaintiff, and, that being so, we have the power here to correct the error. (*Elwood* v. *The City of Rochester*, 43 Hun, 102.)

The judgment appealed from should be reversed and a new trial granted, with costs to abide the final award of costs.

DWIGHT, P. J., BRADLEY and WARD, JJ., concurred.

Judgment reversed and new trial granted, costs of this appeal to abide the final award of costs.