Instead of finding the actual value of the services, the referee seems to have adopted an erroneous rule in measuring the value of the services of the witness. The rule for estimating the services should have been their actual value, and not such value as the services may have been supposed "to be worth to the defendant in the particular circumstances in which he was placed." Perrine v. Hotchkiss, 58 Barb. 77. This is a case which, according to numerous authorities, we should scrutinize, and the claim should be established by satisfactory evidence relating to the extent of the services and the value thereof. Kearney v. McKeon, 85 N. Y. 139; Rowland v. Howard, 75 Hun, 1, 26 N. Y. Supp. 1018; Forbes v. Chichester (Sup.) 8 N. Y. Supp. 747; Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583. In the latter case it was said, "The courts should see to it that such estates are fairly protected against unfounded and rapacious raids." See, also. Dorman v. Gannon, 38 N. Y. Supp. 659, decided by this court in April, 1896. The foregoing views lead to a reversal of the judgment.

Judgment reversed and a new trial ordered, with costs to abide the event. All concur.

---

SMITH v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

1. ACCIDENT AT CROSSING—NEGLIGENCE—PROVINCE OF JURY.

Plaintiff and his servant, while attempting to drive across a railroad, were struck by defendant's east-bound train. The tracks and highway were constructed in cuts, and there was evidence that no view along the tracks could be had until within a short distance from the crossing. Plaintiff sat on one side of the wagon, and his servant, who drove, upon the other; and said servant testified that as they approached the crossing plaintiff was engaged in filling his pipe. The east-bound train was behind time, but plaintiff supposed that it had already passed. Plaintiff testified that as he approached he looked for a west-bound train first, and, upon turning to look the other way, saw the train close upon them. When the train was first discovered, plaintiff's servant pulled up on the horses, and then immediately urged them on. There was evidence that the usual signals were not given. Held, that it was a question for the jury whether defendant was guilty of negligence which caused the injury.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.

The question whether plaintiff was guilty of contributory negligence was also for the jury.

3. CONTRIBUTORY NEGLIGENCE OF SERVANT—IMPUTATION TO MASTER.

If the servant to whom plaintiff committed the control of the horses was guilty of negligence contributing to the accident, such negligence was imputable to plaintiff.

4. INSTRUCTION—PREJUDICIAL ERROR.

The refusal to give a requested charge to that effect was not harmless error.

Follett and Adams, JJ., dissent.

Appeal from circuit court, Ontario county.

Action by David A. Smith against the New York Central & Hudson River Railroad Company for personal injuries. From a judgment entered on a verdict of a jury in favor of plaintiff for $3,000, and from an order denying a motion for new trial, defendant appeals. Reversed.

The action was to recover for personal injuries sustained by the plaintiff on the 16th of August, 1892, while crossing the defendant's railroad, about a mile east of Chapinville, which was the first station east of Canandaigua on the defendant's road. A highway crosses the railroad in an easterly and westerly direction. There is a cut on the defendant's road some 300 feet from the railroad crossing, and the highway, as it comes down to the railroad from the east, is also in a cut. The road has a descending grade of 33.79 feet to the mile to the northeast, and the highway at the crossing is 7 feet lower than it is 200 feet further east. It descends about 2 feet within the last 38 feet of the track. The plaintiff approached the crossing from the west, and was unable to see along the railroad to the southwest until he got within about 40 feet of the track. It is claimed at that distance he could see 240 feet, and when within 26 feet he could see the ringing post on the road, which is some 1,345 feet southeast of the crossing. Plaintiff was the lessee of a farm which was divided by the railroad, and resided west of the railroad, and he left his house about half past 1 o'clock the day of the accident, to cross the track to get a load of oats. He had a two-horse lumber wagon with a rack on it, and with him was his hired man, Henry Speer. The horses first were on a walk, and the walk became quite a brisk one as they approached the track. The plaintiff sat on the left-hand side of the wagon, with his back to the north, about the middle of the hayrack, and Speer, his hired man, was sitting on the other side of the wagon, facing him, and was driving the horses. The east-bound train left Canandaigua 22 minutes late, and was due at the crossing at about 1:17 p. m. The plaintiff testifies that he supposed it had gone, and as he approached the track he was laboring under that impression, and looked first for the west-bound train, and, becoming satisfied that none was coming, he looked the other way, and the passenger train was right on him, approaching from the west. Speer testified that the plaintiff, as they approached the track, was filling his pipe, or lighting it, and that he did not notice that the plaintiff paid any attention to the railroad, as they were talking together. The plaintiff, in his testimony, says:

"I had my pipe in my mouth, I think. I don't think I took my pipe out as I went along down towards the railroad; still I might. I don't recollect the circumstance that at about the time of the accident, or just before, that I was lighting my pipe. It is possible that I was."

Speer testifies that he heard no signals, and that the wagon was making a noise, and that Smith and he were talking. Smith testified that he did not hear the train whistle for the crossing, but he refused to be positive that it did not whistle. As the plaintiff and Speer discovered the approaching train, Speer first pulled up on the horses, and then immediately he and Smith urged them across, and the wagon was struck, and the plaintiff was thrown out, and injured to some extent. There is some evidence that the cut on the railroad was nearly 1,000 feet long and from 14 to 31 feet deep. The base of the cut was in some places only 8 feet from the rails. There is some evidence to the effect that the plaintiff would need to be within 25 feet of the track before he could see 500 feet up the track. There was some slight curve in the track. The train was running from 35 to 50 miles an hour. Plaintiff called several witnesses, who testified that they heard no signal of any kind as the train approached the crossing. The witness Carson, who noticed the train, and watched it, swears that no signal nor warning of any kind was given from the train until just as it struck Smith's wagon, when it gave the danger signal. Smith and Speer were the only eyewitnesses to the collision aside from what was discovered by the trainmen. The engineer testifies that he was within 500 or 600 feet of the crossing when he saw the horses' heads, and that he then sounded the whistle in less than a second after he saw the horses' heads, and that he ran about 200 feet when he saw the men.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Albert H. Harris, for appellant.

John Gillette, for respondent.

HARDIN, P. J. The facts and circumstances disclosed by the evidence are sufficient to make it a question for the jury whether the defendant was guilty of negligence which caused or contributed to the injury which was received by the plaintiff. Greany v. Railroad Co., 101 N. Y. 423, 5 N. E. 425; Parsons v. Railroad Co., 113 N. Y. 364, 21 N. E. 145; Swift v. Railroad Co., 123 N. Y. 649, 25 N. E. 378; Miller v. Railroad Co., 82 Hun, 164, 31 N. Y. Supp. 317, affirmed 146 N. Y. 367, 41 N. E. 90.

2. Upon all the evidence given at the trial we are inclined to think that the question of whether the plaintiff was guilty of contributory negligence was one of fact proper to be submitted to the jury. Miller v. Railroad Co., 82 Hun, 164, 31 N. Y. Supp. 317, affirmed 146 N. Y. 367, 41 N. E. 90; Wilcox v. Railroad Co., 88 Hun, 267, 34 N. Y. Supp. 744; Salter v. Railroad Co., 59 N. Y. 631; Id., 88 N. Y. 42. When Smith and Speer discovered the on-coming train, whether it was wise to advance or to° endeavor to hold the team may have been a very close question, and, considering the imminent peril they were in, they could not be expected to act with cool deliberation; and whether, under all the circumstances, their action was such as might reasonably be expected, was a proper question for the jury to determine. Miller· v. Railroad Co., supra. "When a person is confronted by danger from both of two lines of action one of which he must take, his choice of either is not negligent." Leavitt, Neg. p. 608, § 156; Buel v. Railroad Co., 31 N. Y. 314; Coulter v. Express Co., 56 N. Y. 585; Twomley v. Railroad Co., 69 N. Y. 158; Salter v. Railroad Co., 88 N. Y. 42.

3. After the delivery of the body of the charge, the counsel for the defendant asked the court to charge, and it did charge:

"That if Speer, the driver of the horses, was negligent in not exercising care in approaching the crossing, or at the crossing, Mr. Smith, the plaintiff, is chargeable with Speer's negligence and the consequences thereof.":

Thereupon the counsel for the defendant requested the court to charge:

"That if Speer, the driver, failed to look for the train, or pay any attention to its approach, he was guilty of negligence, and Smith, the plaintiff, is chargeable therewith; and if the jury find that Speer's negligence contributed to the accident, the plaintiff cannot recover."

The court declined to so charge, and added, viz.:

"The law about that is just this: Speer was the hired man there. He was under the control of Smith; and if Smith himself was using proper care, and watching out for that train, then it made no difference whether Speer was doing it or not. But if Smith was not doing anything, and leaving it for Speer to see, not only about the driving of the horses, but watching out for the train, and trusting the whole matter over to Speer, then Speer's negligence would be the negligence of Smith. But if Smith was taking care for himself, then it does not make any difference whethe⌐ Speer was there or not, because Smith was doing all he was called upon to do."

Thereupon the defendant excepted to the refusal of the request made, and also excepted to the charge as made. In considering these exceptions, it is proper to call to mind the situation of Speer

and Smith at the time they were attempting to cross the defendant's road. They sustained to each other the relation of master and servant, or principal and agent, and all the duties incident to those relations are to be imputed to them respectively. Speer was driving at the time, having the lines in his hands, and the management of the team. He says in the course of his testimony, viz.:

"I was looking at the horses going along down. I had the responsibility of driving them. There were no directions from Smith about the manner of driving."

According to the plaintiff's testimony, he was doing nothing to control or manage the horses. He says he looked and listened; yet he states that he committed the control of the horses to his servant, Speer. The request made calling for a consideration of Speer's failure of suitable attention in approaching the crossing, and also of the manner in which he handled the horses at the time the danger was discovered, especially in his efforts first to stop them, and then, afterwards, his sudden change of mind in urging them forward. The burden was upon the plaintiff to show that he was free from contributory negligence. In bearing the burden it was incumbent upon him to indicate by the testimony relating to the circumstances preceding and attending the crossing that he and his servant had used due diligence in approaching and attempting to cross the railroad. In Donnelly v. Railroad Co., 109 N. Y. 16, 15 N. E. 733, the plaintiff was riding to market on a fish wagon, and the two men were so situated that each was in a situation where he could control or manage, or contribute to the management of, the team. The plaintiff was injured. In the course of the opinion delivered in that case it was said, "We think the plaintiff was chargeable with the neglect of his comrade." In Brickell v. Railroad Co., 12 N. Y. St. Rep. 450, affirmed 120 N. Y. 290, 24 N. E. 449, it appeared that the plaintiff took passage in Pulver's top buggy for the village of Palmyra, and that plaintiff received injuries in attempting to cross the railroad, and in the course of the opinion delivered in that case I had occasion to say:

"If the plaintiff or Pulver had attended vigilantly to their duty in approaching the crossing, the injuries in question might have been averted. Apparently they were occupied in conversation, giving no especial attention to the circumstances affecting their safety in crossing the railway, during the progress from the south side of the bridge 120 feet onward."

Follett, J., in concurring in that opinion, stated that a witness testified:

"That he saw and heard the train, and stopped and waited for it; but that the carriage in which the plaintiff was riding kept right on, and was struck. The plaintiff, by his own evidence, established that his negligence contributed to the accident."

When that case was under review (120 N. Y. 290, 24 N. E. 449) it was said in the course of the opinion, viz.:

"The rule that the driver's negligence may not be imputed to the plaintiff should have no application to this case  Such rule is only applicable to cases where the relation of master and servant or principal and agent does not exist, or where the passenger is seated away from the driver, or is separated

from the driver by an inclosure, and is without opportunity to discover danger and to inform the driver of it. Robinson v. Railroad Co., 66 N. Y. 11. It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger, and avoid it if practicable. The plaintiff was sitting upon the seat with the driver, with the same knowledge of the road, the crossing, and environments, and with at least the same, if not better, opportunity of discovering dangers than the driver possessed, and without any embarrassment in communicating them to him."

In speaking of this rule it is said in Wood, R. R. (Ed. 1894) § 322a, that:

"Where the master is seated on the driving box with his servant, who holds the reins, and an injury occurs while they are driving over a crossing, the master's action for damages will be barred if the negligence of his servant contributed to cause the injury."

And in 4 Am. & Eng. Enc. Law, § 38, it is said, viz.:

"Imputable contributory negligence, which will bar the plaintiff from recovery, exists when the plaintiff, although not chargeable with personal negligence, has been by the negligence of a person in privity with him, and with whose fault he is chargeable, exposed to the injury which he received through the negligence of the defendant."

In the course of the opinion delivered in denying the motion at special term, the learned trial judge observed:

"If the plaintiff was taking care of himself, then it does not make any difference whether his hired man was there or not, because the plaintiff was doing all that he was called upon to do. * * * If a man was taking care of himself for his own safety, he certainly could not be made liable for any accident that occurs, although somebody else, upon whom he was not depending, was not using proper care."

We think the failure of the explanation made in the charge, and of the explanation made in defense thereof found in the language we have just quoted, lies in the omission to apply all the facts and circumstances disclosed by the evidence to the rule of law which casts upon the plaintiff the burden of showing that he was not only personally free himself, but that his agent or servant, who was engaged in the same common purpose, at his instance and request, of approaching and safely crossing the tracks of the defendant, was free of contributory negligence. In Callahan v. Sharp, 27 Hun, 85, affirmed 95 N. Y. 672, where it appeared that the driver of the coach was subject to the control and command of the party who employed him, it was said that the driver's negligence was imputable to her. See, also, Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391. It is contended, however, by the learned counsel for the respondent that, "even if, technically, the defendant was entitled to the abstract charge requested, no harm has happened to it." We are not able to assent to that view of the case. The evidence relating to the plaintiff's freedom from contributory negligence presented a very delicate question for the jury to determine; and the jury, as the charge was made, and as the refusal was made and the explanation was made, may have had an imperfect understanding of the exact rules of law which were applicable to the facts relating to the question of the plaintiff's freedom from contributory negligence. We cannot assent to the supposition that the jury may not have been misled by the rules of law delivered to them by the learned

judge at the trial. We are of the opinion that the exceptions present such errors as require that there should be a new trial.

Judgment and order reversed, and a new trial ordered, with costs to abide the event.

GREEN, J., concurs. WARD, J., concurs in the result. FOLLETT and ADAMS, JJ., dissent.

