SIRAGAN S. COSTIKYAN, AS ADMINISTRATOR OF THE ESTATE OF STEPHEN K. BABASINIAN, DECEASED, RESPONDENT, *v.* THE ROME, WATERTOWN AND OGDENSBURG RAILROAD COMPANY, APPELLANT.

*Railroad company — liability of, for the death of a passenger passing from one car to another while the cars were in motion.*

An action was brought to recover against a railroad company the damages resulting from the death of a passenger who, a short time after he had entered a passenger coach, on a train on the defendant's road, went into the smoking car, and after smoking a cigarette started to return into the passenger coach. While he was in the act of stepping from the platform of the smoking car to the passenger coach, in the rear thereof, the coupling between those two cars broke and the deceased was thrown down a steep gorge, over which the train was passing at the time, and was killed.

The jury found that the breaking of the coupling was caused through the negligence of the defendant.

*Held,* that the passenger, in the absence of instructions or notice from the company not to do so, only assumed, in going from one car to another while the train was

in motion, the ordinary risks incident to such action on his part, and had a right to assume that the couplings and appliances were in a safe and proper condition, and that the railroad company was liable for the consequences of their not being so.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Erie on the 2d day of May, 1890, in favor of the plaintiff; and also from an order, made May 1, 1890, denying the defendant's motion for a new trial made upon the minutes of the court.

The action was brought to trial at the Erie County Circuit, at which a verdict was rendered for the plaintiff for the sum of $5,000.

*Edmund B. Wynn*, for the appellant.

*Abram Bartholomew*, for the respondent.

CORLETT, J.:

On the 28th day of June, 1888, the deceased took passage on the defendant's road from Niagara Falls to Watertown. The train consisted of an engine, baggage, smoking car and several passenger coaches. A short time after entering the coach he went into the smoking car with a cigarette. After smoking he started back into the passenger coach. While he was in the act of stepping from the platform of the smoker to the coach in the rear, the coupling between them broke and the deceased was thrown down a steep gorge over which the train was passing and killed. The plaintiff was appointed administrator. This action was brought; a trial was had in April, 1890, which resulted in a verdict of $5,000 for the plaintiff. A motion for a new trial was made and denied, and the defendant appealed from the judgment and order to this court.

The evidence on the trial tended to show, and the jury found, that the breaking of the coupling was caused by the negligence of the defendant. The central contention of the defendant on this appeal is based on the assumption that it was negligence on the part of the deceased to go into the smoker and return while the train was in motion. It is undoubtedly true that ordinarily a passenger who goes from one car to another while the train is in motion assumes the risk incident to such an undertaking. If the ordinary motion of the train should shake him from the platform, there

being no defect in coupling or machinery, the company would not generally be liable. Not that the act of the passenger in passing from one car to another would be one of negligence, but because he would have just as good an opportunity as the defendant to know that there was some hazard attending a journey through the train while it was in motion. This fact being manifest, and as much within the knowledge and observation of the passenger as the company, in the nature of things he incurs the ordinary risk attending a passage from one car to another under such circumstances.

There is no statute or rule of the company forbidding a passenger from going from a passenger coach from which he is riding into the smoker and after that returning. In fact, a smoking car constitutes a part of the train for the accommodation of passengers; and in the absence of instructions or notices by the company to passengers not to go to it and return while the train is in motion, there is an implied license that they may do so subject, of course, to the ordinary risks obviously involved. It is not seen how they would incur any greater risks than the visible ones attending the journey. There is nothing tending to show that this accident would have happened except for the defective coupling. If the connection of the cars had been safe the deceased would have gone and returned, so far as appears, in perfect safety.

It is not negligence *per se* for a passenger to stand on the platform while the train is in motion. (*Nolan* v. *Brooklyn City and Newtown R. R. Co.*, 87 N. Y., 63; *Marquette* v. *C. and N. W. R. R. Co.*, 33 Iowa, 570; *Goodrich* v. *Penn. and N. Y. Canal Co.*, 29 Hun, 50.) The position of the deceased was in many respects the same as that of an employee.

In *Goodrich* v. *New York Central and Hudson River Railroad Company* (116 N. Y., 398) it was held that a railroad corporation owed its employees the duty of furnishing cars properly equipped with safe and suitable appliances. All the cases are to the same effect. The same is true in the case of a passenger. The company owes him the duty of providing safe machinery and appliances, and, if by its negligence in those respects a passenger is injured, no reason is seen why it is not liable for the damages sustained, in the absence of negligence on his part which contributed to the injury.

It was not shown on the trial that, in the present case, the deceased

in any way contributed to produce the accident which caused his death. The evidence tends to show the reverse. He only assumed the visible risks incident to going from one car to another while the train was in motion. In doing so he had a right to assume that the couplings and appliances were in a safe and proper condition. The injury was caused by the want of safe couplings. The case was properly submitted to the jury. (*Palmer* v. *D. and H. C. Co.*, 120 N. Y., 170.) No errors appear on the record which would authorize a reversal.

The judgment and order must be affirmed.

MACOMBER, J. :

I concur in the result reached in the opinion herein of Mr. Justice CORLETT.

On account of the decision of this court in the case of *Goodrich* v. *Pennsylvania and New York Canal and Railroad Company* (29 Hun, 50), which is in principle the same as this, we should, I think, affirm the judgment, irrespective of the reasons hereinafter expressed. There is also language used by the Court of Appeals in *Nolan* v. *Brooklyn City and Newtown Railroad Company* (87 N. Y., 67), which though possibly, as is claimed by appellant, not necessary to the decision of that case, cannot be ignored by us. There Judge FINCH says : " The rule is settled that, independent of the mandate of the statute, * * * it is not, even in the case of steam cars, negligence *per se* for a passenger to stand on the front platform of a moving car," referring to those cases where the passenger was unable to procure a seat within the car.

But I think it extremely doubtful if the statute (Laws of 1850, § 46, chap. 140), known as the general railroad act, and the regulations thereunder made by the defendant, are applicable to the case of a passenger passing carefully upon a lawful errand from one car to another while the train is in motion. The language of the statute is : " In case any passenger on any railroad shall be injured while on the platform of a car, or on any baggage, wood or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place inside of its passenger cars then in the train, such company shall not be liable for the

injury; provided said company at the time furnished room inside its passenger cars sufficient for the proper accommodation of the passengers."

The language there used is broad enough to include passengers in getting on and off the cars at proper times and places. But, clearly, no such construction can be put upon the statute, notwithstanding the comprehensiveness of the words used "while on the platform of a car," etc. A passenger must pass upon the platform both in getting on and getting off the train. If, while in that act, he is injured, say by the giving away of the platform, could it be reasonably contended that there could be no recovery because he was "injured while on the platform," and while there was sufficient room inside the cars for the proper accommodation of passengers? The question is not debatable, though the words in a literal sense would in the case supposed exempt the company from liability.

The true meaning of this section is, that the passenger shall not stand or remain on the platform while the cars are in motion, when there is sufficient accommodation inside the car. It does not make the presence of the passenger on the platform *per se* an act of negligence, and such has been its practical construction and application by railway companies. The regulation of this defendant, posted inside its cars, printed on metal, is as follows: " Passengers are not allowed to stand on the platform."

Passing from one car to another while in motion is not of itself a violation of these regulations. In so doing it may well be conceded that even outside the statute the passenger takes upon himself the ordinary hazards attending the act, such as the perils of the lurching and jerking of the train, of the elements, of his own misstep or want of nerve and other like hazards. But I am not prepared to hold that his presence on the platform while returning from the smoking car, where he went to smoke, to his seat in another coach, when the train was running at its usual speed, is *per se* such a reckless act as to absolve the defendant from the duty of furnishing couplings sufficient to hold the cars together, thus by its negligence adding to the well-known and ordinary perils of transit the unknown and extraordinary, namely, the omission of duty of the company to provide suitable and proper appliances for holding the cars together, a failure of obligation to the public which is

inexcusable under the law governing the liability of common carriers of passengers for hire. In my judgment, the jury was justified by the evidence in finding that, except for the defective couplings, the plaintiff's intestate would have passed in safety from the one car to the other.

The judgment should be affirmed.

Judgment and order appealed from affirmed.