KATHERINE V. WHITAKER, Appellant, *v.* STATEN ISLAND MIDLAND RAILROAD COMPANY, Respondent.

*Negligence — injury to a passenger standing up, preparatory to getting out of a car, and also to prevent her infant child from falling out — failure of the car to stop and its running with dangerous speed across other tracks — charge that it was not easier for the mother to hold the child while standing than while sitting.*

In an action to recover damages for personal injuries, sustained by the plaintiff, evidence was given tending to show that the plaintiff with her three-year-old son boarded one of the defendant's street cars and notified the conductor that they desired to stop at what was known as the Richmond avenue crossing; that the plaintiff had frequently ridden upon the defendant's cars and knew that it was the custom for them to stop on the east side of the Richmond avenue crossing without signal; that as the car approached the crossing, the plaintiff stood up partly because she expected that the car would be stopped as usual at the east side of the crossing and partly because she thought that she could hold her son, who was kneeling on the seat in front of her, more securely when standing up than when sitting down; that instead of stopping at the east side of the crossing, the car continued to move rapidly over the crossing which was incumbered by an abrupt curve and two open switches and other railroad tracks; that, in consequence of the rapid motion, the plaintiff was thrown out and injured.

The motorman admitted that he saw the plaintiff standing up in the car about thirty seconds before the accident occurred, and that he knew that it was dangerous to run the car rapidly over the crossing. The conductor also admitted that he saw the plaintiff standing up before the accident and that he presumed that she was about to signal him to stop. The plaintiff's husband testified that the conductor of the car called on him after the accident and stated that he did not know that the stopping place of the car was on the east side of the Richmond avenue crossing, and that the defendant had asked him to make a statement that the accident had happened through the plaintiff's fault, but that he had refused to make such a statement because it was untrue.

*Held*, that the questions of the defendant's negligence and of the plaintiff's freedom from contributory negligence should have been submitted to the jury, and that it was error for the court to direct a verdict in favor of the defendant.

*Semble*, that it was error for the trial justice to rule that "the court has to take judicial notice of the fact that it is not easier to hold a child standing up in a rapidly moving car than sitting down firmly on the seat."

APPEAL by the plaintiff, Katherine V. Whitaker, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 13th day of December, 1901, upon the verdict of a jury rendered by direction of the court, and.also from an order entered in said clerk's office on the 16th day of December, 1901, denying the plaintiff's motion for a new trial made upon the minutes.

*Hector M. Hitchings*, for the appellant.

*Warren C. Van Slyke* [ *George M. Pinney, Jr.*, with him on the brief], for the respondent.

HIRSCHBERG, J. :

The plaintiff recovered a verdict on the first trial of this case, and the judgment entered on it was reversed because the jury was permitted to predicate negligence on the defendant's part from the fact that at the time of the accident the sidebar on the left side of the car was up. ( *Whitaker* v. *Staten Island M. R. R. Co.*, 65 App. Div. 451.) As stated by Mr. Justice WILLARD BARTLETT, writing for the court, " the proof showed that the plaintiff fell or was thrown from the left side of an open car at or near an abrupt curve in the track after the car had passed the *usual stopping place* without stopping. The lady was standing at the time, and had her arm around her little boy *to prevent him from falling* from the seat in front of her."

The evidence on the second trial was practically the same as on the first one, but the court directed a verdict in favor of the defendant at the close of the evidence, on the ground that there was no proof of defendant's negligence, and that contributory negligence on the part of the plaintiff was established as matter of law. The plaintiff is, therefore, entitled on this appeal to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as established in her favor. ( *Ladd* v. *Ætna Ins. Co.*, 147 N. Y. 478, 482 ; *Higgins* v. *Eagleton*, 155 id. 466 ; *Ten Eyck* v. *Whitbeck*, 156 id. 341, 349 ; *Bank of Monongahela Valley* v. *Wes-*

*ton,* 159 id. 201, 208; *McDonald* v. *Metropolitan Street Ry. Co.,* 167 id. 66, 68.)

Under the rule referred to the evidence must be considered, for the purposes of this appeal, to have established the following facts. The plaintiff and her little boy, about three and a half years old, with her friend Mrs. Armstrong and her little boy, a few months younger, boarded one of the defendant's open trolley cars at Midland Beach, to go to Richmond or Bergen Point ferry. The cars run upon Richmond terrace, and in order to take the ferry it is necessary to alight at Richmond avenue, the cars always stopping for that purpose, to the plaintiff's knowledge, at the first or easterly crossing of Richmond avenue. The conductor of the car was notified by Mrs. Armstrong at the time they boarded the car that they desired to leave at the Richmond avenue crossing in order to take the ferry. The plaintiff had traveled on the cars in question thirty times before the accident, and on each occasion the cars stopped on the east side of Richmond avenue without signal. On the day of the accident she stood up as the car approached the crossing, intending to alight, and in the expectation that the car would be stopped as usual, but instead of stopping it continued going very fast, and, as a consequence, she was thrown out and injured. At the crossing there is an abrupt curve and two open switches and also other railroad tracks laid on Richmond avenue, and it was the rapid motion of the car in going around the curve, over the other tracks and through the switches, which caused the plaintiff to be thrown out. The motorman himself admitted that it was a dangerous place and practically that he knew it was dangerous to run the car as he was running it. He said: "I could not run around there full power because the car would not have swayed (staid?) on the track going around that curve. *I knew I was running into a dangerous place when I got down there and I knew that Mrs. Whitaker was standing up in that car.* I saw her standing up before I got down there. I saw her at the railroad crossing." The railroad crossing referred to by him is thirty seconds distant in point of time from the place where the accident occurred. The conductor also admitted that he saw the plaintiff standing up before the accident. He said: "It looked to me as if she was going to look around to notify me to stop. I presume that is what she was going to do." He made no

denial of the statement that he had been previously informed by Mrs. Armstrong that she and the plaintiff desired to get off for the ferry, but admitted that " we stopped there if there was anyone to get out there." Neither he nor the motorman denied that the cars always stopped there without signal. The plaintiff's husband testified that the conductor called on him after the accident and stated that he did not know the stopping place was on the east side and that the company had asked him to make a statement that the accident had happened through the fault of Mrs. Whitaker, but that he had refused to make such a statement because it was untrue. This also was uncontradicted. The question was asked the conductor on cross-examination, referring to the plaintiff and her husband : " Didn't you tell them that unless you could get from them a statement that it was her fault you would lose your position and beg her for a statement ? " but the question was ruled out and the plaintiff excepted. The conductor did then make these qualified denials : " I *don't remember* telling Mr. Whitaker and Mrs. Whitaker that I appreciated that it was my fault and I was sorry for it, and I ought to have stopped on the near side of Richmond avenue, and I had been only recently on the car and did not know the rules. I *don't remember stating* that I was at fault and I should have stopped at the near side of Richmond avenue and I was a new man on the road and did not know I should have stopped there. *I could not swear to it, whether I did so state or not.*" In view of the conductor's position and responsibility in the case, the jury might very well conclude that, if he could not deny making these statements, he might have made them and, therefore, they might be true. The denials would almost have the force and effect of admissions, especially in reference to the plaintiff's claim that he was unacquainted with the rule requiring the car to be stopped at the place of the accident and had so stated to her husband.

It is clear that from this evidence the jury would have been entitled to conclude that it was a rule of the company that all cars should stop on the east crossing of Richmond avenue without signal, in order to accommodate passengers who desired to take the ferry; that it was dangerous to attempt to cross the avenue at a high rate of speed because of the tracks, switches and curves; that on the day in question those in charge of the car either in ignorance

or violation of the rule did cause the car to continue over the avenue without stopping, and at a high and dangerous rate of speed; that this was done with full knowledge upon the part of the conductor that the plaintiff desired to get off the car at that place and desired him to stop it for that purpose, and with full knowledge on the part of the motorman that the plaintiff was occupying a position which made it dangerous to run the car as he was running it, and that the accident which befell the plaintiff was one to have been reasonably anticipated by both the conductor and the motorman and was the proximate result of their negligence. The proposition that under such circumstances the question of defendant's negligence should be submitted to the jury for determination scarcely needs authority to support it, but the following, among many cases, may be noted: *Francisco* v. *Troy & Lansingburgh R. R. Co.* (88 Hun, 464); *Lansing* v. *Coney Island & B. R. R. Co.* (16 App. Div. 146); *Schmidt* v. *Coney Island & B. R. R. Co.* (26 id. 391); *Wylde* v. *Northern R. R. Co. of N. J.* (53 N. Y. 156).

The same cases are equally authority for the proposition that the question of the plaintiff's contributory negligence was also for the jury. There is some dispute about the place at which the plaintiff first arose from her seat, and remained standing until she was finally thrown from the car, but giving her the benefit of every favorable intendment as the law requires upon this appeal, it may be fairly said that the jury could well conclude that it was only as the car approached the place at which she was about to alight that she arose to her feet for that purpose. But she had an additional reason for standing besides her purpose of leaving the car. The seat upon which she was sitting was fully occupied and she had accordingly been obliged to place her little boy on the seat in front of her. This was directly behind the motorman, and there the child was on his knees, peeking out over the windowsill, which is at the front end of the open trolley cars, and watching the motions of the motorman, child-like. Twice the swaying of the car threw him from his seat. The first time he " would have been thrown out if there hadn't been some one on the other end caught him from falling out of the car." After he was thrown down the second time, and as the plaintiff was nearing the place where she expected the car to stop in accordance with custom, and in compliance with the informa-

tion given to the conductor that she was to alight there, she stood up and placed her arm around the child in order to prevent him from being thrown out when the car stopped. She was asked on cross-examination if she thought she could protect her boy better by standing up than by sitting down beside him, to which she replied, " I do. Little boys cannot be managed by rule. I know my little boy would not allow me to sit there holding him. I tried it on the seat I had been sitting, trying to hold him on my lap, but he would not be there. There was room for me to sit down to the left of my boy on the left hand side. I do not think that I could have protected my boy from falling out on the left hand side as well by sitting down as by standing up. *I couldn't hold him better sitting down than standing up with the car in motion. I thought I could protect him better.*" It certainly was not negligence as matter of law for the mother about to leave the car to stand up for that purpose and to hold her infant child. The learned trial justice stated that " the court has to take judicial notice of the fact that it is not easier to hold a child standing up in a rapidly moving car than sitting down firmly on the seat." It may be assumed that the question with the plaintiff at the time was not one of ease but one of safety. The case as has been seen presented other features besides the fact that she was standing, and which tended to make the question of her care and prudence under the circumstances peculiarly one for the consideration and determination of practical men. She had some reason to expect that the car would stop at its customary stopping place, and no good reason appears why it did not. In preparing to alight it was natural that she should follow what she says was her best judgment with a view to the protection of her child from possible injury, and whatever conclusion as to her conduct a jury may reach, it is certainly beyond the scope of judicial vision to see negligence in the instinctive promptings of maternal solicitude.

The judgment and order should be reversed.

All concurred.

Judgment and order reversed and new trial granted, costs to abide the event.