JOHN B. KETTEL, Appellant, v. ERIE RAILROAD COMPANY, Respondent.

First Department, February 23, 1917.

Railroads — negligence — injury to passenger who went upon platform contrary to prohibitory notice before train stopped — statute of the State of New Jersey — when passenger not entitled to recover.

The statute of the State of New Jersey provides that if a passenger on a railroad train shall be injured by reason of going on the platform of a car in violation of the printed regulation of the company, posted in a conspicuous place inside of its passenger cars, said company shall not be liable for the injury provided seats were furnished for the proper accommoda-

tion of passengers, and, hence, where a railroad company operating in that State had complied with the statute as to posting a notice, and there was no question of lack of seating accommodation, a passenger who went upon the platform before the train came to a stop at a station and was there thrown and injured by a sudden jerking of the train, cannot recover.

*It seems*, that, irrespective of the statute, a public service corporation, held to the strictest responsibility to protect its patrons, should be allowed to make reasonable rules to guard against injury, and where those rules are explicit and deliberately violated by the passenger the corporation should be relieved from liability.

CLARKE, P. J., and LAUGHLIN, J., dissented, with opinion.

APPEAL by the plaintiff, John B. Kettel, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 16th day of November, 1915, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 22d day of November, 1915, denying plaintiff's motion for a new trial made upon the minutes.

*Sydney A. Syme,* for the appellant.

*William C. Cannon,* for the respondent.

SMITH, J.:

The plaintiff had taken one of the defendant's trains at Jersey City for Rutherford, N. J. As the train was nearing the Rutherford station the trainman came into the car and called the name of the station. Before the car had come to a stop, but while it was practically in front of the station, the plaintiff went upon the platform of the car. While there and before the train had stopped the train gave a jerk, and he was thrown from the platform to the ground and suffered the injury for which he here sues. There is no question that the jerking of the train whereby the plaintiff was thrown to the ground might have been found by the jury to have been sufficient upon the question of defendant's negligence. Furthermore, if there had been no statute of New Jersey, under the decisions probably the going upon the platform when the train was so nearly stopped directly in front of the station might not be deemed as matter of law contributory negligence. The trial

court nonsuited the plaintiff solely upon the ground that the plaintiff had gone upon the platform of the train before the train had stopped in violation of the posted regulation of the company in which case, under the New Jersey statute, it is declared that the company shall not be liable for the injury. That statute reads as follows:

" 39. In case any passenger on any railroad shall be injured by reason of his going * * * on the platform of a car * * * in violation of the printed regulations of the company posted up in a conspicuous place inside of its passenger cars on the train, such company shall not be liable for the injury; provided said company at the time furnished seats inside its passenger cars sufficient for the proper accommodation of its passengers." (N. J. Laws of 1903, chap. 257, § 39.)

No question is made of lack of seating accommodation.

The evidence shows that there was conspicuously posted at each end of the car the following sign in large letters: "Passengers must keep off the platform until the train stops." The statute is clear. The notice posted is explicit. It would seem as though this statute and this regulation were enacted to meet this precise case. The statute exculpates the railroad company where a passenger goes onto the platform in violation of a rule posted in the car, and this rule expressly forbids passengers from going onto the platform before the train stops. There can be no ambiguity either in the terms of the statute or in the terms of the notice. To hold the defendant liable in this case is to repeal the statute. This rule appears to have been held in the Supreme Court of New Jersey in *Forrest* v. *N. Y. & Greenwood Lake R. Co.*, not as yet reported but stated in the briefs. The Supreme Court of New Jersey is not its highest court, and perhaps its decision is not compelling upon us as to the construction of the statutes of New Jersey. Nevertheless, it must be deemed persuasive, and as it accords with what I deem to be the unmistakable reading of the statute I think it should be followed in this State.

There is not a reported case in any State in which a railroad company has been held liable for an injury occurring to a passenger while on the platform of a car in violation of a specific and unmistakable notice as in the case at bar. The

statute of our own State declares the company shall not be liable for injury to a passenger while on the platform of a car in violation of the printed regulations of the corporation posted in a conspicuous place inside the car. (See Railroad Law [Consol. Laws, chap. 49; Laws of 1910, chap. 481], § 83.) In the case of *Buel* v. *New York Central Railroad Co.* (31 N. Y. 314) it was held: "A passenger, who is injured in attempting to leave the cars on seeing two trains approaching each other at such a speed as to make a serious collision inevitable, is not to be deemed guilty of negligence. Although he is upon the platform of the cars, attempting to escape, at the time he was injured, he is not standing or riding upon the platform in such a sense as to excuse the company *under the regulation prohibiting passengers from standing or riding on the platform when the cars are in motion.*"

The notice posted in the car in the case cited prohibited passengers from standing or riding on the platform of any cars. The courts have generally agreed that such a general regulation posted in the car is not a prohibition against a passenger stepping upon the platform at a station for the purpose of alighting. In *Costikyan* v. *Rome, Watertown & Ogdensburg Railroad Co.* (58 Hun, 590) an action was brought to recover against a railroad company the damages resulting from the death of a passenger who, a short time after he had entered a passenger coach on a train on the defendant's road, went into the smoking car, and after smoking a cigarette started to return into the passenger coach. While he was in the act of stepping from the platform of the smoking car to the passenger coach, in the rear thereof, the coupling between those two cars broke and the deceased was thrown down a steep gorge, over which the train was passing at the time, and was killed. The jury found that the breaking of the coupling was caused through the negligence of the defendant. It was held that the passenger, *in the absence of instructions or notice from the company not to do so,* only assumed, in going from one car to another while the train was in motion, the ordinary risks incident to such action on his part, and had a right to assume that the couplings and appliances were in a

safe and proper condition and that the railroad company was liable for the consequences of their not being so. The court in its opinion says: "There is *no statute or rule of the company forbidding a passenger from going from a passenger coach from* [*sic*] *which he is riding into the smoker and after that returning.* In fact, a smoking car constitutes a part of the train for the accommodation of passengers; and *in the absence of instructions or notices by the company to passengers not to go to it and return while the train is in motion,* there is an implied license that they may do so subject, of course, to the ordinary risks obviously involved."

In the opinion of Mr. Justice MACOMBER in that case our statute referred to in the *Buel* case was discussed. In reference thereto, among other things, the learned justice says: "The regulation of this defendant, posted inside its cars, printed on metal, is as follows: 'Passengers are not allowed to stand on the platform.' Passing from one car to another while in motion *is not of itself a violation of these regulations.*" In *Schultze* v. *Missouri Pacific Railway Co.* (32 Mo. App. 438), under a statute similar to the one in question, a notice was posted in the cars forbidding the passengers *to stand upon the platform.* It was held in that case that this did not apply to a passenger about to alight from the train which was stopping. The California statute exempts a corporation from liability in case a passenger is injured on the platform of a car in violation of the printed regulations posted within the car. In *Thomas* v. *San Pedro, L. A. & S. L. Ry. Co.* (170 Fed. Rep. 129) one Thomas was a passenger on defendant's railroad. The defendant had posted a regulation which forbade passengers from *riding on the platform* or steps of the car and required them to remain in their seats while the train was in motion. In that case Thomas went upon the platform, preparing to alight, and it was held that he was *not riding on the platform* within the meaning of the prohibition. The same rule was held in *Pruitt* v. *San Pedro, L. A. & S. L. R. Co.* (161 Cal. 29).

It would seem as though, irrespective of the statute, a public service corporation, held to the strictest responsibility to protect its patrons, should be allowed to make reasonable rules to guard against injury, and where those rules are explicit and are

deliberately violated by the passenger the corporation should be relieved from liability. Suppose notice were given to passengers that when alighting they must not go upon the platforms of cars until the train has fully stopped, can it be possible that a passenger by an act in deliberate violation of that rule can recover damages for an injury sustained by reason of such act ? Such a proposition seems to me abhorrent to every dictate of fair play. But in this case there was a statute permitting this very rule and exempting the corporation from liability for injury occurring while violating the rule. The rule itself cannot be misunderstood. When the posted notice forbade a passenger from going onto a platform until the train stopped, the natural and only inference is " until it stopped for the purpose of allowing passengers to alight." A passenger train does not usually stop for other purposes. No one claims that this rule is a prohibition against passing from one car to another when necessary, as in going to a smoker or diner. Such would not be a reasonable construction of the rule as held by all the cases. So a posted rule against riding or standing on a platform, or requiring a passenger to remain in his seat while the train is in motion does not apply to a passenger about to alight, because it would not naturally be so understood by the passenger. And this is all that has been held by the cases cited in this opinion or in the opinion of the presiding justice. The distinguishing feature of this case is that this plaintiff was injured while deliberately violating a rule which unmistakably forbade his going onto the platform "until the train stops." In some of the cases the slowing of the train and announcement of the station is spoken of as an invitation to go upon the platform for the purpose of alighting. But the station must be announced and the train must slow up in approaching the station. These facts can only have significance where the notice posted is a general notice as against standing or riding on a platform. It is a "far cry" to interpret these acts as an invitation to the passenger to come out upon the platform, as against the explicit unmistakable prohibition of the posted notice. If the statute means anything it permits this notice and exempts defendant from liability for accidents from its violation. If the prohibition in the notice

means anything it prohibits the very act of the plaintiff which resulted in his injury.

The judgment and order should, therefore, be affirmed, with costs.

DOWLING and PAGE, JJ., concurred; CLARKE, P. J., and LAUGHLIN, J., dissented.

·CLARKE, P. J. (dissenting):

This is an action to recover damages for injuries sustained by the plaintiff, a passenger on one of defendant's trains, alleged to have been caused by the negligent management of the train resulting in a sudden jerk as it was in the act of stopping at a station whereby the plaintiff was thrown from the platform of a car and run over. The learned trial court stated the facts as follows: "Resolving all conflicts of either statement or inference in plaintiff's favor, the facts of the present case are substantially as follows: It was broad day-. light. Plaintiff was a man in the prime of life and of good health; he had been accustomed to travel on defendant's trains between their New York terminal and Rutherford, the station at which place the train in question was approaching at the time of the accident. As the train approached this station a trainman announced the fact. Plaintiff left his seat and proceeded toward the platform. After the station had been announced and before plaintiff had reached the platform — the train had slowed up, but exactly to what extent does not appear. Arriving at the platform plaintiff turned, and with his right hand grasping the handrail fixed to the body of the car, stood near the edge of the platform just about where the steps of the car begin. While so standing the train continuing in motion although slowly and with slackening speed, it was given a sudden jerk forward, the plaintiff's hold upon the handrail was broken and he was thrown back against the rear guardrail of the car, from which point he fell to the ground and the wheels of the car behind passed over his leg. That the train then had but little headway is shown from the fact that only about half of the car, the front wheels of which injured the plaintiff, had passed beyond the point where plaintiff was thrown when the train came to a standstill, which

would indicate that the train had practically reached the point in the station where it was intended to be stopped."

The learned trial court also said: "I do not think that as matter of law it could be said that under any and all circumstances it would be contributory negligence for a passenger preparing to alight to voluntarily go out of the car and stand on the platform as his train approached the station. It would depend upon the particular circumstances of each case and where different conclusions might be drawn therefrom — the question is not one of law but of fact."

This statement of the law is well sustained by the authorities, which hold that a sudden jerk by a train while in the act of coming to a stop is evidence from which the negligence of the defendant may be found, and that it is not contributory negligence as a matter of law for passengers under such circumstances to be standing in the aisles or upon the platform preparing to alight.

In *Wylde* v. *Northern R. R. Co. of N. J.* (53 N. Y. 156) ANDREWS, J., said: "On entering the depot the locomotive was detached from the train. The plaintiff rose from his seat to button his coat, in preparation for leaving the car. The cars, after the locomotive was detached, moved on through the depot, and struck with great force a 'bumper' at the end, throwing the plaintiff down, and over the arm of a chair behind him, causing the injuries which are the subject of this action. * * * There is no ground for imputing negligence to the plaintiff. It is probable that if he had retained his seat the injury would not have happened. He had no notice of danger, and had a right to assume that the train would be stopped in the usual manner. The train had reached its destination, and the plaintiff left his seat with a view of leaving the car as soon as the train stopped. He did, as passengers usually do, and what the company must have known they were accustomed to do, and the plaintiff could not have supposed that the act was inconsistent with safety." That case was applied in *Colwell* v. *Manhattan Railway Company* (57 Hun, 454), where a passenger left her seat in an elevated train as it was approaching a station, the guard holding the door open; was quoted in *Thomas* v. *San Pedro, L. A. & S. L. Ry. Co.* (170

Fed. Rep. 129), and was cited in *Whitaker* v. *Staten Island M. R. R. Co.* (72 App. Div. 468), holding that where a passenger was injured by rising from her seat at the place where the car was accustomed to stop, the negligence of the defendant was a question for the jury. To the same effect, *Railroad Company* v. *Pollard* (22 Wall. 341). In *Miles* v. *King* (18 App. Div. 41), where a passenger rose from her seat and stood in the aisle to permit another passenger sitting upon the same seat to get out, was thrown down by a sudden jerk and had her leg broken, the court said: "It is clear that the jury would be authorized to find that the train was slowed down very nearly to the point of stopping, was at the time opposite the platform of the station where passengers were expected to alight and where they did alight. Under such circumstances, the defendants were bound to take notice of the fact that passengers, intending to leave the train at that station, would be engaged in preparation, and that they might be upon their feet for that purpose. * * * Under such circumstances the jury would be authorized to find that it was negligence to suddenly and without warning jerk the train so violently as to throw the passengers into the seats. The usual result flowing from such an act would cause a person to lose his balance and bring him, with more or less violence, dependent upon his position and the violence of the jerk, in contact with the seats of the car. Injury in this manner and from this cause has frequently happened, and the courts have held the act sufficient upon which to predicate negligence. (*Wylde* v. *Northern R. R. Co. of N. J.*, 53 N. Y. 156; *Newton* v. *Central Vermont R. R. Co.*, 80 Hun, 491; *Bartholomew* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 716; *Colwell* v. *Manhattan R. Co.*, 57 Hun, 452.)"

In *Newton* v. *Central Vermont R. R. Co.* (80 Hun, 491; affd., 151 N. Y. 624)' the conductor announced plaintiff's station, the train slowed up and the plaintiff with other passengers started for the door of the car to alight on reaching the door. The coach was suddenly jerked and the plaintiff was thrown across the platform and fell between the passenger car on which he was riding and a freight car which was hauled in that train, and injured. A verdict for plaintiff was sustained, although it was claimed that plaintiff was intoxicated,

the court saying: "We cannot hold that what he did in this case, in moving towards the door of the car after the name of the station was announced by the conductor was, as matter of law, such negligence as would preclude a recovery."

In *Bartholomew* v. *N. Y. C. & H. R. R. R. Co.* (102 N. Y. 716) plaintiff passed out with other passengers onto the platform of the car, and by a sudden jerk of the train was thrown from the platform and injured. The court said: "As the train neared Rochester, the conductor informed her that she must change cars at the first place at which the train would stop; that 'Rochester' would be called and she must take the second right-hand train. Sometime after this the brakeman called 'Rochester, change cars.' The train was then either stopped or slowed down so that to her, in the inside of the car, it appeared to have stopped. She was bound to act upon appearances, and after making the announcement, if the train was run so slow as to appear to a person of ordinary intelligence and observation to have stopped, ordinary care for the safety of the passengers required the train to be so run and managed as not to endanger their lives, and a sudden jerk, or start, without any warning, when the passengers were upon their feet moving toward the platform of the cars, was sufficient evidence of carelessness to impose liability upon the defendant."

In *Field* v. *D., L. & W. R. R. Co.* (69 N. J. Law, 433) a passenger on a railroad train as he approached his destination, prepared to alight, and, while standing inside of the car, near the rear door, which was open, a violent jerk or start of the train threw him out of the car. Defendant's counsel moved for a verdict on the ground that there was no negligence proved against the defendant, and that plaintiff was guilty of contributory negligence. The Court of Errors and Appeals sustained a verdict for plaintiff, holding that it was clearly a jury case.

In *Kramer* v. *D., L. & W. R. R. Co.* (79 N. J. Law, 161) plaintiff was a passenger. Just before reaching Summit, one of the defendant's agents notified the passenger that the train was approaching Summit, which was her destination; she gathered up her bundles, walked to the front platform of the car she was in, and by the time she had reached the first step

of the car the train started with a jerk which threw her off. It was held that a question for the jury was presented.

In *Southern Ry. Co.* v. *Roebuck* (132 Ala. 412) the court said: "It has often been decided that the leaving of a car while in motion is not necessarily as matter of law negligence on the part of a passenger. Nor can it be said to be negligence *per se* for a passenger  *  *  *  when he has been directed or invited by the carrier to leave the car, to take a position on the platform or the steps of the car preparatory to alighting. And having taken such position under the circumstances shown in this case, it was for the jury to find  *  *  *  whether he was guilty of negligence in remaining there in a position to comply with the carrier's direction or invitation for the length of time the plaintiff maintained that position on the occasion of his injury."

In *Sweet* v. *Birmingham Ry. & Elec. Co.* (136 Ala. 166) it was said: "If defendant's train was so managed as to apparently invite passengers to alight at Eighth Avenue, those so operating the train were bound to act with reference to the probable acceptance of such invitation and to use care for the avoidance of jerks and other movements calculated to make the act of alighting dangerous. *McDonald* v. *Long Island R. Co.*, 116 N. Y. 546."

In *Smalley* v. *Detroit, etc., R. Co.* (131 Mich. 560) the plaintiff left her seat and went upon the platform. The train started again and stopped so suddenly that she was injured. She was held not to be guilty of contributory negligence.

In *Nolan* v. *Brooklyn City & Newtown R. R. Co.* (87 N. Y. 63) it is said: "The rule is settled that, independent of the mandate of the statute  *  *  *  it is not, even in the case of steam cars, negligence *per se* for a passenger to stand on the front platform of a moving car."

In *Augusta Southern R. R. Co.* v. *Snider* (118 Ga. 146) a passenger was in his seat when the conductor announced his station. He arose and walked out upon the rear platform while the train was still moving. He turned to go back into the car and was injured. The court said: "It cannot be held  *  *  *  as matter of law that it is negligence for a passenger to go upon the platform of a car propelled by steam, while it is in motion."

In *Scheiber* v. *Chicago, St. P., M. & O. Ry. Co.* (61 Minn. 499) the court said: "It is not negligence *per se* for a passenger in a railway car, as it approaches a station, to leave his seat, and go to the door of the car, in order to alight when it stops; neither is it such negligence, under all circumstances, for him to ride on the platform, or go upon it before the car stops for the purpose of getting off when it does stop, for there may be cases where, from necessity or the express or implied invitation of those in charge of the train, a prudent man would do so, but, in the absence of such facts, it is such negligence."

The latest case I have found is *Spiesberger* v. *Michigan Central Railroad Co.* (235 Fed. Rep. 864), in the Circuit Court of Appeals, Seventh Circuit. Plaintiff was a passenger on a train running into Chicago, and intended to get off at Forty-third street. The porter of the parlor car announced this as the next stop. The train was slowing down, the vestibule doors were open, and the trap doors on the steps up. Plaintiff with others walked out on the platform and was descending the steps, grasping the handrail, when the train started ahead with a sudden jerk, throwing him off and under the train, injuring him severely. In reversing a verdict directed for the defendant the court said: "When a station is announced, and its near approach reasonably expected, it cannot be said to be negligence *per se* for passengers to get ready to leave the train. Common experience shows that if their preparation for departure did not begin until the station was actually reached and the train had stopped, they would most likely be carried beyond their destination. They must not unreasonably expose themselves to danger by going upon the platforms of rapidly moving trains; but where the train is apparently slowing down for the station announced, and is seemingly about to stop, it is not necessarily negligence in the passenger to go out upon the vestibuled platform or to begin descending the steps before the train has actually and fully stopped. Whether in going on the platform and steps the passenger manifests negligence for his own safety is ordinarily not a question of law for the court, but is for the jury." (Citing *Thomas* v. *San Pedro, L. A. & S. L. Ry. Co.*, 170 Fed. Rep. 129; *St. Louis, I. M. & S. Ry. Co.* v. *Leftwich*, 117 id. 127; *Northern Pac. Ry. Co.* v.

*Adams*, 116 id. 324; *Larson* v. *Minneapolis & St. Louis R. R. Co.*, 85 Minn. 387.) The opinion concludes with a long quotation from *Baltimore & O. R. Co.* v. *Meyers* (62 Fed. Rep. 367).

But the defendant pleads in its answer and proved upon the trial section 39 of chapter 257 of the Laws of New Jersey of 1903: "In case any passenger on any railroad shall be injured by reason of his going or remaining on the platform of a car or on any baggage, wood or freight car, in violation of the printed regulations of the company posted up in a conspicuous place inside of its passenger cars on the train, such company shall not be liable for the injury; provided said company at the time furnished seats inside its passenger cars sufficient for the proper accommodation of its passengers." It was conceded that defendant had posted at each end of the car in which plaintiff was riding on the day of the accident signs reading: " Passengers must keep off the platform until the train stops," and that there were vacant seats in the car. The learned trial court said: " On all the facts of the present case I think plaintiff cannot, without regard to the statute, be held to have been guilty of contributory negligence, but in view of section 39 of the New Jersey statute and of the posted regulations or notice to passengers that has been given in evidence, I think it must be held that the plaintiff is precluded from recovery."

There has been a similar statutory provision in this State for many years. Section 83 of the New York Railroad Law (Consol. Laws, chap. 49; Laws of 1910, chap. 481) provides: " No railroad corporation shall be liable for any injury to any passenger while on the platform of a car, or in any baggage, wood or freight car, in violation of the printed regulations of the corporation, posted up at the time in a conspicuous place inside of the passenger cars, then in the train, if there shall be at the time sufficient room for the proper accommodation of the passenger inside such passenger cars.   *   *   * "

While it does not appear that the precise situation presented here has ever been squarely passed upon in this State, it has been in many other States and in the United States courts upon similar statutory provisions.

In *Buel* v. *N. Y. C. R. R. Co.* (31 N. Y. 314) it appeared

that plaintiff was a passenger on a train which had been run on a switch and had waited there fifteen minutes for a train due from the west. His train then started west and proceeded a short distance when the train from the west was discovered approaching. Plaintiff's train was stopped and backed. He saw the approaching train and men jumping from the cars. He left his seat and hurried to the forward end of the car as fast as he could to escape. As he opened the door and set his right foot on the platform the collision occurred and he was injured. If he had kept his seat he would not have been hurt. There were posted in the several cars printed notices prohibiting passengers from standing or riding on the platform of any car, etc., and that safety and convenience required that passengers should keep their seats. WRIGHT, J., said: "The court was requested to charge the jury, that as the plaintiff was injured on the platform of the car, in violation of the printed regulations of the company, he was not entitled to recover. This was properly refused. The statute exempts a railroad company from liability to a passenger who shall be injured while on the platform of a car, etc., in violation of the printed regulations of the company posted up at the time in a conspicuous place inside of its passenger cars then in the train; provided the company at the time furnished room inside its passenger cars sufficient for the proper accommodation of the passengers. (Laws of 1850, ch. 140, § 46.) * * * But neither the statute or the regulation has any application to a case like the present one. The plaintiff was not standing or riding on the platform at the time of the collision, but was hurrying as fast as he could to leave the car, in order to escape an imminent peril. The statute was intended to prevent the imprudent act of standing or riding on the platform, *but not to absolve railroad companies from responsibility for every injury which might happen at that place, when a passenger is passing over it, while justifiably entering or leaving the cars.*" (Italics mine.)

This was applied in *Baltimore & Ohio R. Co.* v. *Meyers* (62 Fed. Rep. 367), holding that the statute exempting a carrier from liability for injuries to a passenger, who was on the platform of the car in violation of the railroad company's

printed warning, does not apply to a passenger who was on the platform at the invitation of a trainman for the purpose of leaving the car; and in *Thomas* v. *San Pedro, L. A. & S. L. Ry. Co.* (170 Fed. Rep. 129, 132), holding that the case was for the jury where the passenger was injured while standing on the platform of a moving train, intending to alight at the next station, although a statute, applicable to the facts of the case, bars a recovery by a passenger who rides on the platform of a car in violation of the printed regulations of the carrier.

In *Baltimore & Ohio R. Co.* v. *Meyers* (*supra*), decided in 1894, the Circuit Court of Appeals of the Seventh Circuit, construing a similar statute of Indiana, section 3928 of the Revised Statutes thereof, said: "This statute was obviously intended to absolve the company from responsibility for damages to passengers imprudently and improperly standing or riding upon the platform; but we cannot conceive that it was designed to apply to a case of a passenger justifiably leaving a car, the platform being the only mode of egress, and the defendant in error being there, by invitation of the servant of the company, for the purpose of alighting. He was not, we think, riding upon the platform within the meaning of the statute. *Buel* v. *R. R. Co.*, 31 N. Y. 314; *Central Railroad and Banking Co.* v. *Miles*, 88 Ala. 256."

In the Alabama case cited *supra*, decided in 1889, the Supreme Court of Alabama had under consideration a regulation of the company which forbade passengers to "stand upon the platform of a car while the train is in motion," which the court had theretofore declared to be a reasonable regulation. (*Alabama Great Southern R. R. Co.* v. *Hawke*, 72 Ala. 112, 116.) The court said: "The platform is the only mode of egress from the car, and if there was no negligence in undertaking to get off, certainly it was not negligence to use the only means provided by the company for doing so. Plaintiff was not riding on the platform in the meaning of the regulation."

*Thomas* v. *San Pedro, L. A. & S. L. Ry. Co.* (170 Fed. Rep. 129), decided in 1909, is an exceedingly well-reasoned case reviewing a large number of authorities. One Thomas was a passenger on defendant's railroad. He had a seat in the smoking car. The defendant had posted, in accordance with

section 484 of the Civil Code of California, a regulation which forbade passengers from riding on the platform or steps of the car, and required them to remain in their seats while the train was in motion. As the train approached the station which was the plaintiff's destination, the brakeman or conductor announced the station; the train slackened its speed, the whistle was sounded. Thereupon, Thomas and a companion left their seats, stating to other passengers that they were going to get off at that station, and went upon the front platform of the car, and immediately thereafter the engine of the train struck an open switch, Thomas was thrown off the platform, and died as the result of his injuries. The Circuit Court for the Southern Division of the Southern District of California granted a nonsuit. The Circuit Court of Appeals for the Ninth Circuit unanimously reversed, MORROW, C. J., saying: " To the rule of the company that passengers are not allowed to ride on the platform, and are required to remain in their seats while the train is in motion, there are therefore necessarily certain exceptions which custom has sanctioned, and which have become admittedly reasonable and proper under certain circumstances. Passengers are permitted to pass from one part of a car to another while the train is in motion in going to and from the lavatory and closet, and they are invited to pass from one car to another while the train is in motion in going to and from the dining car. It is also usual for passengers to prepare to leave their car before the train reaches the station at the place of destination, and they are permitted to proceed towards and sometimes upon the platform of the car for that purpose while the train is still in motion. It is therefore manifest that this rule is subject to the qualification that a passenger may leave his seat in a car while the train is in motion and go upon the platform of the car if under all the circumstances such action is prudent and careful, and whether it is so or not is a question of fact for the jury."

*Pruitt* v. *San Pedro, L. A. & S. L. Ry. Co.* (161 Cal. 30), decided in 1911, was the companion case to the *Thomas Case* (*supra*). Pruitt's action was brought in the Superior Court for Los Angeles county. Defendant had a verdict, which was set aside and a new trial granted. The trial court sent but one

question to the jury, namely, as to whether the plaintiff was upon the platform at the time of the accident, charging that if he was, he could not recover. The District Court of Appeals for the Second Appellate District affirmed the order for a new trial.

The District Court of Appeals said: "If a passenger voluntarily goes upon the platform solely for the purpose of riding there, notwithstanding accommodations are provided for him within the car, the intent of the law would no doubt justify a trial court in instructing the jury as a matter of law that the railroad company is not liable, because the passenger has violated its rules. But where the question of the necessity of a passenger going upon the platform is involved, as, for instance, where he is seeking to protect himself against an anticipated or threatened injury, or there is an invitation, either implied or express, by the company to do that which requires that he go upon the platform, while the train is in motion; for example to move from one car to another in order to smoke at the place or in the car provided for that purpose; or to go to the dining car for the purpose of eating; or, where the train stops at a way or flag station and the time to get off is limited and he is asked, or beckoned to, by the conductor to come to the platform so that he will be ready to get off with the least possible delay to the train, it can hardly be said that the going upon the platform is a violation of the rule or within the meaning and intent of the law. Under such circumstances, the question whether it is necessary, or there is such an invitation from the railroad company as to constitute a waiver of the violation of its posted rules, or to estop it from taking advantage of such violation, is a mixed one of law and fact and should be submitted to the jury under appropriate instructions." The Supreme Court of California affirmed, and after quoting the decision of the District Court of Appeals, which included a review of *Thomas* v. *San Pedro, L. A. & S. L. Ry. Co.* (170 Fed. Rep. 129), said, also: "This decision of the district court reaches what we deem to be the proper construction to be given to sections 483 and 484 of the Civil Code. * * * Whether a passenger is negligent or not in leaving his seat and approaching towards the platform, or is actually on the platform of a

train while it is motion, in violation of the rules and regulations of the company, after the station at which he intends to leave the train has been announced and the train is approaching, is held in the following cases to be a question of fact for the jury." (Citing *Schultze* v. *Mo. Pac. Ry. Co.*, 32 Mo. App. 438; *Scheiber* v. *Chicago, St. P., M. & O. Ry. Co.*, 61 Minn. 499; 63 N. W. Rep. 1034; *Barden* v. *Boston, Clinton & Fitchburg R. R. Co.*, 121 Mass. 426; *Newton* v. *Central V. R. R. Co.*, 80 Hun, 491; *Baltimore & O. R. Co.* v. *Meyers*, 62 Fed. Rep. 367; *Thomas* v. *San Pedro, L. A. & S. L. Ry. Co.*, 170 id. 129; *Wylde* v. *Northern R. R. Co.*, 53 N. Y. 156; *Romine* v. *Evansville, etc., R. R. Co.*, 24 Ind. App. 230; 56 N. E. Rep. 245; *Lane* v. *Spokane Falls & Northern Ry. Co.*, 21 Wash. 119; 57 Pac. Rep. 367.)

In *Schultze* v. *Mo. Pac. Ry. Co.* (32 Mo. App. 438) the station was announced where plaintiff was to leave the train, the whistle was blown for the station and the train slackened its speed. Plaintiff went to the platform and stepped down on the steps, thinking the train was stopping. Discovering that it was not, he started to go back into the car, and a sudden jerk of the train threw him off, injuring him. This being substantially all the evidence the defendant, at the close of the case of plaintiff, moved for an instruction in the nature of a demurrer to the evidence, which the court overruled, and defendant excepted. The Court of Appeals said: "It is difficult to see what act or acts of plaintiff in this case could be imputed to him as negligence. He was a passenger to Lee's Summit and expected to get off there, the whistle was blown for this station, the train began to check, and the porter passed through the car and announced the station. There certainly was nothing careless or unreasonable in the conduct of plaintiff, in preparing to get off the train. While he might have remained in his seat until the train came to a standstill at the depot, his approaching the door and platform in the manner stated in his evidence certainly was not such contributory negligence as to disprove the cause of action stated in his petition."

At the time of this accident section 800 of the Revised Statutes of 1879 (Missouri) provided substantially, as do the statutes

of California, that in case any passenger on any railroad train should be injured while on the platform of a car while the train was in motion, if it had posted up notices at the time in a conspicuous place in the passenger cars then in the train, such company should not be liable for the injury. Notices as required by this statute were posted inside the car forbidding passengers to stand on the platform. It was contended on the part of the defendant that under the statute it was negligence *per se* for the plaintiff to stand on the platform while the train was in motion. In reference to this defense the court said: "In our opinion, the case at bar does not fall within the spirit and object of section 800 of the Revised Statutes, 1879. It cannot be reasonably claimed that the plaintiff was riding or remaining on the platform of the car in the sense condemned in this statute. As before suggested, he was induced to go there to alight from the train, by the conduct of defendant's agents and servants. The whistle signaled the station, the train checked, the porter announced the station — what might have been reasonably expected of a passenger expecting to leave the train at that point?"

In *Forbes* v. *Chicago, R. I. & Pac. R. Co.* (135 Iowa, 679) the Supreme Court of Iowa in affirming a verdict for the plaintiff said: "It is claimed that as it is made a crime by Code, section 4811, to get off a train while it is in motion, plaintiff was guilty of such contributory negligence in attempting to do a prohibited act as to defeat his recovery. * * * The evidence does not show that plaintiff attempted to actually step or pass from the car to the station platform, but only that he had taken a position on the step of the car ready to get off and was thrown from this position by the jerking of the train. * * * No authorities are cited to sustain the position that it is negligence on the part of a passenger to leave his seat and pass along the aisle and out upon the platform of the car while the train is in motion, preparatory to alighting when the train shall stop."

In *Costikyan* v. *Rome, W. & O. R. R. Co.* (58 Hun, 591; affd., 128 N. Y. 633) a passenger, after smoking in the smoking car, started back into the passenger coach. While in the act of stepping from the platform of the smoker to the coach in

the rear the coupling broke and he was thrown off and killed. The court, after quoting the language of Judge FINCH in *Nolan* v. *Brooklyn City & Newtown R. R. Co.* (87 N. Y. 67), "The rule is settled that, independent of the mandate of the statute, * * * it is not, even in the case of steam cars, negligence *per se* for a passenger to stand on the front platform of a moving car," said: "But I think it extremely doubtful if the statute (Laws of 1850, § 46, chap. 140), known as the General Railroad Act, and the regulations thereunder made by the defendant, are applicable to a case of a passenger passing carefully upon a lawful errand from one car to another while the train is in motion. * * * The true meaning of this section is, that the passenger shall not stand or remain on the platform while the cars are in motion, when there is sufficient accommodation inside the car. It does not make the presence of the passenger on the platform *per se* an act of negligence, and such has been its practical construction and application by railway companies. The regulation of this defendant, posted inside its cars, printed on metal, is as follows: 'Passengers are not allowed to stand on the platform.' Passing from one car to another while in motion is not of itself a violation of these regulations."

In *New York, L. E. & W. R. R. Co.* v. *Ball* (53 N. J. L. 283) plaintiff rode in the baggage car, there being no seats in the smoking car, in violation of a rule of the company which forbade passengers riding in the baggage car *under any circumstances*. A verdict for the plaintiff was sustained, the court saying: "On the morning in question, the seats in the smoking compartment were filled, and vacant seats in other cars could only be reached by passing over the platforms of the moving train. These facts, which were uncontradicted, would, in my judgment, have justified the inference of an implied invitation to ride in the place plaintiff was. * * * Where a passenger, under similar circumstances, rode on the platform, and was there injured in a wreck of the train, it was held that a question for the jury arose, and a finding that the act was not negligent was supported. *Willis* v. *Long Island R. R. Co.*, 34 N. Y. 670."

In *Rivers* v. *Pennsylvania R. R. Co.* (80 N. J. L. 217) the Supreme Court reversed a verdict for plaintiff. The facts were as follows: Plaintiff walked from one car to another of a vestibuled train for the purpose of obtaining a seat. The trap doors on the platform had been opened by a trainman and the plaintiff fell to the ground and was injured. A motion for a nonsuit was made below on the ground that there could be no recovery because of section 39 of the Railroad Law (N. J. Laws of 1903, chap. 257). The Supreme Court said: " The injury would not have occurred if the plaintiff at that time had not been upon the platform. * * * The statute taken in connection with the posted notices of the regulations of the company, grants to the company immunity when these rules are violated, and in effect prohibits the use of platforms by a passenger upon a moving train." But on appeal to the Court of Errors and Appeals (83 N. J. L. 513) the Supreme Court was reversed and the judgment for plaintiff of the Circuit Court affirmed, the court saying: " The Supreme Court rested its opinion * * * largely upon a consideration of section 39 of the General Railroad Law * * * as applied to the state of the proofs. * * * But this section does not preclude recovery by a passenger who uses the platform for the purpose of going to the next car to obtain a seat which the company has failed to furnish in the car which he originally entered. * * * We think the question whether, in the exercise of the high degree of care required, the defendant should have anticipated that a passenger would pass from one car to another for the purpose of looking for a seat when within four-fifths of a mile from the end of his journey was not for the court, but for the jury, and was properly submitted to them."

*Central R. Co. of New Jersey* v. *Hirsch* (223 Fed. Rep. 44) was a case where the passenger was standing on the steps of a vestibule car in a moving train, to which position he was invited by the action of a baggageman in opening the vestibule doors under instructions from the conductor to let the passenger off at the next station, should the train be obliged to stop there. The New Jersey statute here relied upon was urged against a recovery in the cited case. The United States Circuit Court of Appeals for the Third Circuit said: ". Just

why the plaintiff took his place on the platform was the chief matter in dispute, but since the verdict we must take the facts to be that he was invited to that position of danger by the baggageman (who was merely the conductor's agent to let the plaintiff off), and that he had good reason to believe that he was so invited in order that he might alight without delay when the train came to a stop. The jury has also found that he was not negligent in accepting the invitation and in taking a position on the steps, and further that the injury was due solely to the negligence charged in the declaration, namely, the baggageman's failure to fasten back the doors securely. The company's negligence is not denied, and the only question that needs consideration now is whether the court should have given peremptory instructions against the plaintiff on the ground that he was guilty of contributory negligence." After citing the statute and the posting of notices the court said: " And it may well be that, if the plaintiff had been injured merely by reason of what may be described as the ordinary and fairly to be expected incidents of a position on the platform of a moving car, it would be necessary to consider how far this statute applied to the special situation, namely, the invitation to assume that position. But he was not so injured. The proximate cause of the injury was the direct interposition of the company's negligence, namely, the failure to secure the doors carefully, and this he was not bound to anticipate. As far as can be seen, he would not have been thrown from the train if this neglect had not been present. Against such want of care he was not obliged to guard, and it was not part of the risk he assumed."

I cannot accept the interpretation of my brother SMITH that this statute and the notice posted in accordance therewith absolutely prohibit a passenger " from going onto the platform before the train stops." It is in my opinion a narrow and unreasonable construction. In these modern times many trains are equipped with a cafe and smoking car, with a barber shop in the front of the train, a dining car, sleeping cars, and at the rear end an observation car, fitted as a ladies' lounge with easy chairs, magazines and illustrated papers. The whole train is fitted and adapted for the use of all its passengers and

invites their attendance at different times and for various purposes in its several cars. But no move could be made from one car to another while the train was in motion except at the passenger's personal risk under the interpretation given above. Needless to say there is no such determination by the authoritative decision of the highest court of the State of New Jersey or of this State. In my opinion the statute is intended to forbid the use of the platform as a *place of transportation or conveyance,* and this is emphasized by the limitation of such prohibition "*provided* said company at the time furnished seats inside its passenger cars sufficient for the proper accommodation of its passengers."

The great weight of authority throughout the country in the State and national courts, as I read the cases interpreting such statutes, is that the necessary use of the platform as the only mode of egress, after the invitation to alight has been given by the announcement of the station and the slowing down of the train, is not riding upon the platform within the meaning of the statute and is no bar to recovery; that under such circumstances as are presented in the case at bar, when after the sudden jerk the train only proceeded about fifteen feet, contributory negligence cannot be found as matter of law, but that a question of fact is presented which must be submitted to the jury.

I am, therefore, of the opinion that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

LAUGHLIN, J., concurred.

Judgment and order affirmed, with costs.