such a preponderance, and that it is shown by certain entries contained in the minutes of the special term at chambers of the court of common pleas held on the 17th of March, 1893.   On the trial of this action, certain memoranda were read from those minutes by the counsel for the defendant; but the clerk who kept them was not called as a witness, nor was there any evidence to show when these minutes were made, nor how or whether on the 17th of March or on a subsequent day.   It did appear by such memoranda that the special term at chambers on that day was held by Judge Giegerich, but it is not contradicted that during some part of the day Judge Pryor did sit in the chambers.   The minutes purported to show that some four orders were made by Judge Giegerich, and then follows the entry of the approval of the undertaking in this cause.   The inference sought to be drawn by the defendant from that as a conclusive one is that the record shows that Judge Giegerich sat at chambers at the opening of the court.   This record may be appealed to so far as it concerns the fact that the orders mentioned therein were granted on that day; but there is nothing therein to show that such orders were granted or made at any particular time in the day, or that the entries were made at the exact time the orders were granted, or consecutively in relation to time.   It does not appear why the clerk who kept those minutes was not called.   It is shown that the record for that same day contains both the approval of the undertaking by Judge Giegerich and the noting of the default by Judge Pryor, and that the latter entry is on a subsequent page to that on which is recorded the approval of the undertaking.   Why orders at chambers were made by two different judges was stated in the record, namely, that Judge Pryor, who was a member of the general term of the court at that time, could not sit therein on that day, because appeals fom him were to be heard, and that Judge Giegerich took his place.   The question was still left open as to who occupied the bench between half past 10 and 11 o'clock.   That issue really depended upon the testimony of the two attorneys.   The judge charges very plainly upon that issue, instructing the jury in a way that seemed to satisfy both parties, for no exception was taken by either party to his charge. The verdict of the jury settled the issue, and we cannot disturb it.

In this situation of the case, it is unnecessary to consider other questions discussed on the appeal, and the judgment and order appealed from should be affirmed, with costs.   All concur.

---

REARDON v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department.   December 31, 1897.)

1. STREET RAILROADS—COLLISION—DEGREE OF CARE.
    Plaintiff, while driving a heavily loaded dirt wagon over one of defendant's cable-car tracks, at a cross street, was struck by an approaching car. Upon the trial of an action to recover damages to his person and to his horses and truck, the questions of fact as to defendant's negligence and plaintiff's freedom from contributory negligence were close.   In charging the jury, the court said:   "They were bound to use the same degree of

care,—the same degree of prudence. Each was bound to look out for, and, if possible, prevent, any accident." *Held*, that this was erroneous, as tending to make the defendant an insurer of safety, especially in view of the court's refusal to charge that "the defendant's gripman was not bound to stop the car when he first saw plaintiff."

2. TRIAL—INSTRUCTIONS NOT BASED ON EVIDENCE.

The complaint had alleged permanent injury, but there was no proof of it, unless to be inferred from plaintiff's statement at the trial, less than two years after the accident, that at times he suffered pain. Though the point was called to the attention of the trial judge, he charged that the jury might compensate plaintiff, "not only for the pain and suffering in the past, but the pain and suffering in the future, if you believe that he will necessarily, as the result of those injuries, suffer further pain and suffering." *Held* error.

Appeal from trial term.

Action by Daniel Reardon against the Third Avenue Railroad Company. From a judgment on a verdict, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Nathan Ottinger, for appellant.
Sumner B. Stiles, for respondent.

O'BRIEN, J. The action was brought to recover damages for injuries to plaintiff's person and to his horses and truck, alleged to have been caused by the negligence of the defendant. The testimony shows that on or about June 26, 1895, shortly before 12 o'clock, the plaintiff was driving a heavily loaded dirt wagon, drawn by two horses, through Ninety-Eighth street, from west to east, and, in crossing Third avenue, had passed in safety the west or downtown track, but was struck by one of the defendant's cars on the east or uptown track. The car was an open car, the seats facing front. There is a down grade going north on Third avenue, between Ninety-Seventh and Ninety-Eighth streets, of about 3 feet in 100, and Ninety-Eighth street has a down grade from west to east, towards Third avenue. The plaintiff's own account of the accident is that his team was going along at "a good, clear walk," and when he got to Third avenue he looked both ways; that a south-bound car had just passed, and there was nothing in the way on the west track, but an up-bound car was at Ninety-Seventh street; that he saw it coming very close on him before he reached the uptown track; that he drove along, and was "middleways in the track," when he saw the car coming with great speed upon him; that he spoke to his horses to get away in a hurry, but they did not go any faster, and he raised his whip hand, and called out to the gripman to give him fair play, but that the car came on and struck his wagon, knocked him to the ground, broke his truck, and injured his horses so that they were no more use to him, and he himself was laid up for nearly a year from his injuries, and at the time of the trial (May, 1897) was still unable to work. Thomas Henry, an eyewitness of the accident, called by the plaintiff, testified that when the plaintiff got to the north-bound track the car was about 75 or 100 feet away, if not more, going about

9½ or 10 miles an hour; that the horses crossed the track, and the car came down, and hit the truck "midway the center"; and that when within about 15 feet of the truck the gripman made an attempt to slacken the speed of the car. Frederick A. Wall, a witness for the plaintiff, who was a passenger on the car, sitting near the front, in the second seat, testified that the dirt cart was being driven at a pretty fair rate of speed, that the car could not have been more than from 25 to 40 feet away when the plaintiff started from the crossing to go across, and that the car slackened its speed just about the moment of the collision. A Dr. Fischlowitz, who was also a passenger on the car, testified in plaintiff's behalf that, when the car was about 50 feet south of Ninety-Eighth street, he saw the plaintiff's team on the uptown track, so that the hindquarters of the horses were between the rails of the north-bound track. On the part of the defendant, the gripman, James H. Grady, testified that he was coming along at the speed of the cable, and when about 100 feet from the Ninety-Eighth street crossing he saw the plaintiff's horses "peeping out" behind two vans that were standing on the west side of Third avenue; that he rang his bell, opened the grip, and applied the brakes; that before the plaintiff reached the downtown track he was about 45 feet away, and about 25 feet from him when his horses stepped on the uptown track; that he shouted to the plaintiff, but he paid no attention, either to the bell or his cries, but continued across, and the car slid into the wagon, striking the hub of the forward wheel. He further testified that a sprinkling cart had been going along there, back and forth, and that the track was slippery. Dr. Fischlowitz also says it was a slippery day, and it was shown by the records of the weather bureau that there was a light fog that morning.

It will be seen that the questions of fact as to the defendant's negligence and the plaintiff's freedom from contributory negligence were close, and were, to some extent, dependent upon the distance of the plaintiff from the car when he attempted to cross the defendant's east or uptown track. This was recognized by the learned trial judge, who, in charging the jury, said: "So it comes to the question of the distance in front of which the plaintiff undertook to cross the approaching car of the defendant." And in the main charge he said: "If you find that the plaintiff attempted to cross the track of the defendant when the car was only thirty feet, or thereabouts, away, then I charge you that there was a reckless approach by the plaintiff to the defendant's tracks, and there should be no recovery by him in this action, on that account." If we assume, as testified by the plaintiff, that the car was more than 30 or 40 feet away when he went upon the track, and that this question, upon the conflicting evidence, was properly submitted to the jury, there are other exceptions in the case which are fatal to the judgment. Thus, in the charge, in speaking of the degree of care to be observed by both the plaintiff and defendant, the court said: "They were bound to use the same degree of care,—the same degree of prudence. Each was bound to look out for, and, if possible, prevent, any accident." The obligation of the defendant was to use that degree of care which a person of ordinary prudence, acting under similar circumstances, would use;

and, strictly construed, the effect of the language quoted would be to make the defendant an insurer of safety. It may be said that it was as unfavorable to the plaintiff as to the defendant; but this by no means undoes the damage which such a statement of the law would be likely to inflict upon the defendant, and more especially if we consider it in view of the court's refusal to charge that "the defendant's gripman was not bound to stop the car when he first saw the plaintiff." Again, the defendant presented the following request: "I charge you that there is no proof of permanent injury in this case." The complaint had alleged permanent injury, and the court had said in its charge that the jury might compensate the plaintiff, "not only for the pain and suffering in the past, but the pain and suffering in the future, if you believe that he will necessarily, as the result of those injuries, suffer further pain and suffering." There was no evidence of permanent injury, the testimony of the physician being that upon examination, after the accident, he found that two ribs were fractured, which ordinarily takes two or three weeks to unite; and while it did appear that four months after the accident the plaintiff was weak and unable to work, and had pain, and at the time of the trial, which took place a year and a half after the examination last alluded to, the doctor testified he could still distinguish the place where the ribs were broken, he did not testify to any permanent, or at that time existing, injury; and that fact did not appear, except as it might be inferred from the statement of the plaintiff that at times he suffered pain. With respect to the medical testimony, even as supplemented by that of the plaintiff, the most that could be said was that at the time of the trial the plaintiff had not entirely recovered from his injuries. In the absence of proof, in the shape of an opinion or otherwise, that such injuries were reasonably certain to be permanent, it was the duty of the court to charge in accordance with the undisputed facts.

There were some minor errors,—in rulings upon evidence, in the judge's charge respecting the elements of damage, and in refusals to charge as requested,—which, in view of the large damages awarded by the jury, must have affected their verdict. The character of the injuries, the absence of any proof of permanent damage, and the evident attempt of the plaintiff to exaggerate such as he received, if there were nothing else, would have caused us to hesitate to affirm this judgment. But in view of the errors committed, some of which we have pointed out, and which cannot be regarded as harmless, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.