OPINION OF THE COURT
Robert F. Doran, J.
In this action, plaintiff is suing for personal injuries resulting from a chain collision of automobiles on March 6, 1978. From the papers on this motion for summary judgment, all three parties involved agree on a single version of the accident.
Plaintiff was stopped for a red light, and defendant Johnson came to a stop behind him. While both plaintiff and defendant Johnson were stopped, defendant Furnia’s automobile struck the rear of defendant Johnson’s car, and the impact pushed the Johnson car into the rear of plaintiff’s automobile. At the time of the accident, plaintiff had been absent from work due to an emotional disorder, but he *382 was due to report back to work. After the accident, he did not report to work until May 1, 1978.
All discovery procedures have been completed. Defendant Johnson moves for an order granting summary judgment dismissing the complaint on the grounds that plaintiff did not sustain a “serious injury” under subdivision 4 of section 671 of the Insurance Law, as amended (L 1977, ch 892, § 8), and that defendant Johnson was not negligent. Defendant Furnia' has also moved via an affidavit for summary judgment to dismiss the complaint against him on the ground that plaintiff failed to sustain a “serious injury”.
The answering affidavit of plaintiff’s attorney attempts to establish a “serious injury” by the presenting of plaintiff’s attending physician’s report dated August 1, 1978, which states in part:
“His main concern was neck pain and stiffness associated with headaches. He indicated that his neck pain seemed to be getting better but his headaches seemed to be as persistent or even more persistent than they were immediately after the accident. His headaches began in the occipital region of his skull (behind his ears) and seemed to sweep up over the top of his calivarum (skull) and lodge behind his eyes where they seemed to have a throbbing character but did not interfere with his vision or hearing. He told me he did not have them except when his neck was particularly painful and that was, he felt, all the time.
“On examination I could find no limitation of flexion or extention of his neck and even when these movements were carried out to the extreme limits of their excursions, nor did they give him pain in his occipital regions. He had no paresthesias or pain either in his neck or in distribution of the nerve roots emanating from the cervical spine. Flexion extention did not cause muscle spasm either. However, lateral bending of his head as well as rotatory movements of his neck were both markedly limited and caused pain in his neck and was accompanied by spasm in his trapezius on both sides. However, I could find no neurologic deficit and palpation over the greater occipital nerve did *383 not produce the expected paresthesias in the distribution of the sensory portion of this nerve.
“I reviewed his X-rays which had been taken previously at the hospital and saw no reason to repeat them for they were adequate. The only abnormality was straightening of the normal cervical lordotic curve which is a reflection of the muscle spasm which I had mentioned in describing the physical findings. There were no dislocation, subluxations or fractures and the bones seemed to be of the expected normal boney architecture.
“It was my impression after this initial encounter that he had sustáined a flexion-extention type of muscular and ligamentous injury of his cervical spine which was the direct result of the rear-end collision in which he was involved on March 6, 1978. He was initially treated symptomatically by the use of a collar rest, and appropriate analgesics and muscle relaxants. At an appropriate time following this initial treatment he was treated in this office with various modalities of physical therapy and was last seen and examined on April 21, 1978.
“When I last saw Mr. Daviero he had made good progress and had a full range of painless motion at the time of the examination. However, on questioning he still admitted that he experienced some pain on the right side of his neck which was associated with occipital headaches but these were becoming less frequent and less severe with passing time. He was given a note to return to work on May 1.
“If I am to commit myself to a prognosis in this instance on my knowledge of the patient to date, I should say his prognosis is good and that there will be no permanency. I am informed that he has an appointment to see me soon and should there be any differences from what I have stated here, I. will inform you.”
Also presented is plaintiff’s testimony at a January 28, 1981 examination before trial (EBT). At most, the testimony reveals that plaintiff had some pain in his neck into 1979 (the EBT states 1978, but it is obvious plaintiff meant 1979) and that he has experienced headaches since the accident, although now he has them only “occasionally.” (Plaintiff’s EBT indicates he never had headaches before *384 the accident, but defendant Furnia’s doctor’s examination of plaintiff states that plaintiff did have occasional headaches prior to the accident.)
Finally, plaintiff’s bill of particulars states in pertinent part as follows:
“10. Swelling and abrasion over right frontal bone.
“a. Persistent neck pain and trama [sic] to shoulder blades.
“b. Persistent headaches to the occipital region of the skull.
“c. A flexion extention type of muscular and ligamenous [sic] injury to the cervical spine.
“d. A straightening of the normal cervical lordotic curve.
“11. The plaintiff has sustained the permanent consequential limitation of the cervical spine.
“17. The serious injury sustained by the plaintiff is the permanent consequential limitation of use of a body organ or member as defined in Section 671(4) of the Insurance Law.”
Under subdivision 4 of section 671, the only other definitions besides that of permanent consequential limitation that plaintiff’s injuries could possibly fit within are: “significant limitation of use of a body function or system; or medically determined injury or impairment of a non-permanent nature which prevents the injured person performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.”
The court concludes that plaintiff has failed, as a matter of law, to establish a prima facie case of “serious injury” within the meaning of subdivision 4 of section 671 of the Insurance Law.
There is no impediment to reviewing the papers on the motion in light of all three definitions, notwithstanding that the bill of particulars states only the permanent consequential limitation definition. Pleadings can always be amended to conform to the proof.
*385 Initially, there can be no prima facie case of medically determined injury or impairment of a nonpermanent nature, since plaintiff returned to work less than 60 days after the accident.
With regard to the permanent consequential limitation definition, plaintiff’s doctor report clearly gives no indication of permanency. Absent such medical proof, there is no way to prove permanency. Plaintiff’s statement of permanency in his bill of particulars is not sufficient.
The law in New York on the issue of damages in personal injury cases: Medical testimony is necessary to warrant a recovery for the permanency of injuries and pain and suffering, at least where the injuries in question are subjective in nature (Horowitz v Hamburg-American Packet Co., 14 App Div 631, revg 18 Misc 24, on dissenting opn thereat; Reardon v Third Ave. R. R. Co., 24 App Div 163; see, also, Webb v Union Ry. Co. of N.Y., 44 App Div 413; Reed v Cone, 61 AD2d 877; Zegman v State of New York, 99 Misc 2d 473).
(In some early New York cases dealing with this issue, the rule seemed to be that medical evidence was necessary in all cases, regardless of the type of injuries and pain or suffering, in order to prove permanency [see Buel v New York Cent. R. R. Co., 31 NY 314; Filer v New York Cent. R.R. Co., 49 NY 42].)
In this case, the possible permanent injury (straightening of the normal cervical lordotic curve) and the possible permanent pain and suffering (occasional headaches) are subjective in nature and would need medical testimony of permanency. Plaintiff’s own doctor refused to give permanency.
The cases cited deal with the question of permanency on the issue of damages, but there is no reason they should not be equally applicable on the threshold issue of “serious injury” under subdivision 4 of section 671 of the Insurance Law.
Moreover, the court also finds that the definition of permanent consequential limitation cannot apply because the permanent injury and pain alleged here do not involve the “use of a body organ or member”, but rather, involve the “use of a body function or system”.
*386 Research does not reveal any case law which attempts to fit various injuries and pain and suffering into the four critical words of “organ”, “member”, “function” or “system.” That is not surprising, because until the 1977 amendment to the definition of “serious injury”, there was no need to do so, since the words were contained in only one definition, i.e., “permanent loss of use of a body organ, member, function or system”.
While the 1977 amendment retains the permanent loss definition with the four words, it also contains the two new definitions, i.e., permanent consequential limitation (limited solely to organ or member) and significant limitation (limited solely to function or system). (Parenthetically, no mention until this point has been made of the permanent loss definition, since the injury and pain in this case could — under no possible line of reasoning — ever fit within that definition of serious injury.)
The court has examined the definitions of the four terms as set forth in Borland’s Illustrated Medical Dictionary (24th ed).
Those definitions in pertinent part are as follows:
“1. organ (or’gan) [L. organum: Gr. organon]. A somewhat independent part of the body that performs a special function.
“2. member (mem’ber) [L. membrum], 1. A part of the body distinct from the rest in function or postion. 2. An outlying part or limb.
“3. function (funk’shun) [L. functio a performance]. The special, normal, or proper action of any part or organ. allomeric f., the function of the spinal cord which depends on the integrative action of their several parts.
“4. system (sis’tem) [Gr. systema a complex or organized whole], 1. A set or series of interconnected interdependent parts or entities (objects, organs, or organisms) which function together in a common purpose or produce results impossible of achievement by one of them acting or operating alone.”
In the court’s view, the injury and pain involved herein come solely under the definitions of function or system.
*387 That leaves only the “serious injury” definition of significant limitation as a possibility.
The issue of whether a question of fact is presented as to if there was or is a significant limitation of use of a body function or system is a closer question.
In an appropriate case, a plaintiff might, under the significant limitation definition, be entitled to recover for injuries and pain and suffering of a limited duration — even for injuries that are not medically determined (Hezekiah v Williams, 81 AD2d 261). The issue is one for the court, in the first instance, to determine whether the plaintiff has established a prima facie case (Ayala v Reyes, 66 AD2d 790). Moreover, to allow every case to go to a jury would render the 1977 amendment of the definition of “serious injury” meaningless and further frustrate the legislative purpose of limiting the number of tort suits for noneconomic loss.
At most, the record herein reveals that plaintiff had a pain and stiffness in his neck for some period of time after the accident — perhaps into 1979, according to his own testimony. He also had occipital headaches. The pain in his neck and the headaches were, according to his doctor’s report, becoming “less frequent and less severe with passing time” when the doctor last saw him on April 21, 1978. And according to plaintiff’s EBT, the pain in the neck ceased in 1979.
Even assuming that the headaches still persist and the lordotic curve is still somewhat straightened (defendant Furnia’s doctor’s Jan. 8, 1981 report indicates otherwise with regard to the lordotic curve), do those injuries result in a “significant limitation of use of a body function or system” as required by the new 1977 definition of “serious injury”? The court concludes that they do not, as a matter of law.
The only objective fact of significant limitation is that plaintiff was out of work from March 6, 1978, the date of the accident, until May 1,1978. The court does not believe that mere absence from work for such a period of time (here, 54 days) can automatically cause every injury and pain to ripen into a significant limitation. The Legislature’s specific addition of the 90 out of 180 days’ definition *388 prevents using such a simplistic approach as the passage of time without work in determining whether there is a significant limitation.
To accept such an approach would totally frustrate the legislative intent behind “no-fault” and bring us back to square one by allowing every whiplash case to reach a jury through the mere stratagem of having a plaintiff stay out of work for a “significant” period of time.
The court recognizes that summary judgment should not be the rule in personal injury cases. However, the Appellate Division, Third Department, has stated that although “the existence of ‘serious injury’ is usually a question of fact best left for a jury to resolve *** summary judgment might be warranted in an appropriate case.” (Simone v Streeben, 56 AD2d 237, 239.) Indeed, that court has granted summary judgment on such issue (Simone v Streeben, supra).
The court has discoursed at some length because it firmly believes that more and more of this type motion for summary judgment will be made, since post-1977 amendment cases are now time-ready for such motions, and particularly, since the Court of Appeals has recently made it clear that in personal injury actions, the reports of a plaintiff’s attending physician are discoverable under CPLR 3101 (Hoenig v Westphal, 52 NY2d 605).
In conclusion, on the record before the court, plaintiff has failed, as a matter of law, to establish the threshold of “serious injury” within the meaning of any of the three possible applicable definitions of subdivision 4 of section 671 of the Insurance Law. Therefore, the court will grant an order allowing a judgment to be entered dismissing the complaint as against both defendants.
The court does not reach defendant Johnson’s additional contention that the complaint must be dismissed as to her because there was no negligence on her part contributing to the accident.
Submit order.